LEWIS NORTHROP, Appellant, *v*. JOSEPH F. HILL, Respondent.

Plaintiff alleged that he was induced to purchase certain premises by means of fraudulent representations on the part of defendant, who held a mortgage thereon, that there was no other incumbrance, when, in fact, there was, to defendant's knowledge, another mortgage upon the premises. This action to recover damages for the fraud was brought more than six years after the discovery of the fraud, but within six years of an eviction under title acquired by foreclosure of such other mortgage. *Held*, that the cause of action arose immediately on the purchase, and the action was barred by the statute of limitations.

(Submitted January 12, 1874; decided May term, 1874.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of defendant entered upon an order nonsuiting plaintiff upon trial at circuit, and affirming an order denying a motion for a new trial.

The action was brought June 1st, 1869, to recover damages for the alleged deceit of the defendant, by which the plaintiff was induced to purchase certain lands of one McCarty and to pay him therefor the sum of $1,701.56. The defence was that the cause of action had not accrued within six years before the action was commenced.

The plaintiff at the trial offered to prove that the defendant had a mortgage of $1,500, or thereabouts, on the farm of one John McCarty, containing forty-seven acres and situated

in Erie county; and that, in order to induce the plaintiff to purchase this farm of McCarty, the defendant falsely and fraudulently represented that there was no other incumbrance upon the farm, though he well knew that there was an incumbrance by a prior mortgage held by one Fellows for $1,500. He further offered to prove that the plaintiff was induced by these false and fraudulent representations to purchase the farm and to take the title from McCarty, who was insolvent; and that he paid for the farm some $1,700, from which sum the defendant's mortgage was paid. This transaction occurred on the 24th day of March, 1854. Afterward, and during the year 1868, the mortgage held by Fellows was foreclosed. The premises were sold under the foreclosure and the plaintiff's title was defeated. The plaintiff had conveyed the land, with warranty, and was compelled to pay his grantee about $4,000. It was admitted by him that after he purchased the farm he had full notice of the fraud, and that he had this notice more than six years prior to the commencement of the action. To these facts the defendant answered that the cause of action was barred by the statute of limitations. The court sustained the objection and the plaintiff was nonsuited, to which the plaintiff excepted. A motion for a new trial was denied and judgment entered for the defendant.

*Sherman S. Rogers* for the appellant. If the action had been brought immediately on the completion of the purchase, only nominal damages could have been recovered. (Rawle on Cov. of Title, 129, note *c, c; Delavergne* v. *Norris*, 7 J. R., 358; *De Forest* v. *Lute*, 16 id., 122.) No action could have been maintained for nominal damages merely. (Broome's Leg. Max., 135; Sedgw., 29, 44; 1 Bouv. Dict., 639.) No right of action accrued until the actual damage was sustained. (*Backhouse* v. *Boudin*, 1 E., B. & S., 970; S. C., 1 E., B. & E., 622, 646, in Ex. Ch.; *Whitehouse* v. *Fellows*, 10 C. B., 765; S. C., 9 C. B. [N. S.], 901; *Bk. of Hartford* v. *Waterman*, 26 Conn., 324.) If an action for nominal damages had

been brought and sustained, the recovery would not have barred the present action. (*McConnell* v. *Kibbe*, 33 Ill., 175.) Plaintiff was as a surety without injury until the sale of this land. (1 Story's Eq. Jur., 556; 3 Seld., 171; 6 id., 178; 10 Paige, 503; 7 id., 470; 16 Barb., 177; 2 Barb., Ch., 338.)

*Delavan F. Clark* for the respondent. Plaintiff's right of action accrued when he purchased the land. (*Bk. of Utica* v. *Childs*, 6 Cow., 238; *Leonard* v. *Pitney*, 5 Wend., 30; *Argal* v. *Bryant*, 1 Sand., 98; *Wilcox* v. *Plummer's Exrs.*, 4 Pet., 172; *Sanborn* v. *Stetson*, 2 Story, 481.) Plaintiff's right of action depended upon the false representation, and consequent damage however small. (*Wadsworth* v. *Harley*, 20 E. C. L., 406; *Battley* v. *Faulkner*, 3 B. & Ald., 288; *Haight* v. *Hayt*, 19 N. Y., 464–467; *Graves* v. *Spear*, 58 Barb., 349–387.) In this case the misrepresentation and injury were concurrent, and the statute of limitation began to run immediately. (*Gillon* v. *Boddington*, 11 E. C. L., 463; *Whitehouse* v. *Fellows*, 100 id., 765; *McConell* v. *Kibbe*, 33 Ill., 175; *Felter* v. *Beale*, 1 Salk., 11.)

DWIGHT, C. There is but a single question in this case. Did the statute of limitations begin to run from the time of the fraudulent representations as to the condition of the land and the plaintiff's purchase upon the faith of them, or does it begin to run from the time of the subsequent eviction, or from the payment of damages on the covenant of warranty? This question resolves itself into the inquiry whether the plaintiff had, at the time when the fraudulent representations were made, and when he acted upon them, an action for damages in such a sense that the *entire* cause of action accrued at that time. If the subsequent damages developed a new cause of action the statute has not barred his claim. On the other hand, if the original wrong contained within itself the complete cause of action, and the resulting loss was merely an aggravation of damages, the claim was barred by the statute in 1869, when this action was brought.

I think, that it is clear that when a party to a contract is guilty of fraud, he commits a wrong for which he is liable to the defrauded party, to pay, at least, nominal damages. The act of entering into contract relations, implies that the parties are to deal in good faith with each other. On no other basis can the minds of the parties be expected to meet. If one of them, professing in this way to act in good faith, in fact, commits a fraud, he breaks the implied obligation he is under, and should be made to respond in damages. It is no answer to say that the defrauded party may rescind the contract. That course is at his option. He may elect to affirm it, and have his action for such damages as he may prove, whether substantial or otherwise. (*Allaire* v. *Whitney*, 1 Hill, 484.) If he proves no special damage, he should, at least, recover nominal damages for the breach of the implied promise to act in good faith. It is familiar law that a party may have an action for breach of duty, though he sustains no positive damage and there is no intention to do wrong. Thus, where an attorney compromised an action in opposition to his client's instructions, though he acted in good faith and caused him no actual damages, he was held liable to pay nominal damages. (*Fray* v. *Voules*, 1 Ellis & Ellis, 839.)

This principle was applied to a case of fraud in *Allaire* v. *Whitney* (1 Hill, 484). The court said : " But, take it that a man fraudulently draws another into a contract to accept and pay for a chattel *a month after ;* the vendee, discovering the fraud on the next day, is it to be tolerated that he shall not have an action immediately ? If he pay anything, even no more than a cent, in earnest, there would be no doubt. But actual damage is not necessary to an action. A violation of right, with a possibility of damage, forms the ground of the action. * * * Once establish, therefore, that in all matters of pecuniary dealings, in all matters of contract, a man has a *legal right to demand that his neighbor shall be honest*, and the consequence follows, viz., if he be drawn into a contract by fraud, this is an injury actionable *per se*. Indeed, it would not be difficult, in all such cases, to show the degree

of actual damage.    The time of the injured party has been consumed in doing a vain thing, and time is money. * * * Fraud is a thing grievously amiss, and, above all, odious to the law; and fraud in a contract can hardly be conceived without being attended with damage in fact."    These views are approved in Sedgwick on Damages (51), and commend themselves to the judgment.    The same point is held in *Pontifex* v. *Bignold* (3 Man. & G., 63), where an action was brought for false and fraudulent representations as to the solvency of an insurance company, whereby the plaintiff was induced to effect a policy, though no actual pecuniary damage was sustained — there being no allegation that there was any insecurity in the insurance — Littledale, J., said : " The act of the defendants was a fraud upon the plaintiff; and if it occasioned him no specific injury, it was, still, to a certain extent, an injury to his right."    (P. 81.)

The plaintiff, accordingly, had a complete cause of action on the 24th day of March, 1854, when the purchase was completed.    Any damage that subsequently followed was merely developed from the original wrong then committed, and was not a new cause of action.    (*Argall* v. *Bryant*, 1 Sandf. [Sup. Ct.], 98.)    In this case there was negligence in publishing, incorrectly, in a newspaper, the amount of capital contributed to a partnership by a special partner.    At the time of the erroneous publication only nominal damages were sustained.    After the firm had gone into business, the plaintiff became liable, as a general partner, for its entire indebtedness.    It was held that the statute of limitations began to run from the time that the error was committed.    The court said, " the plaintiff's right to commence a suit was totally distinct from the measure of his damages."    (P. 100.)    The cause of action in that case was derived from the breach of the *implied contract*, on the part of the newspaper proprietor, to publish the partnership notice with due care and diligence.    That breach was complete when the newspaper, containing the notice, was issued.    All

that subsequently followed was merely the development of the damages resulting from the original wrong.

Suppose that the plaintiff, in the present case, had employed an attorney, gratuitously, to search the title to McCarty's farm, and he, through his neglect, had not disclosed the Fellows mortgage, and the plaintiff had paid McCarty the full value of the land, without reference to the mortgage, when would the statute of limitations have begun to run in the attorney's favor? Would it not have been at the time when the plaintiff paid his money? (See *Howell* v. *Young*, 5 Barn. & Cress., 259; *Short* v. *McCarthy*, 3 B. & Ald., 626.) If that be so, would it have made any difference that the attorney, falsely and fraudulently pretended that he made the search, when he had not? Certainly not. The ground of action, in either case, would be for *breach of duty;* and that breach would be the same, whether it were occasioned by negligence or fraud. The justice of the rule, here sought to be enforced, is apparent in its application to the present case. For the sake of the discussion, it has been assumed to be a case of nominal damages, which, in fact, it is not. After the defendant knew that the fraud had been committed, he might, at any time, have paid off the Fellows mortgage and have sustained damage to that extent, which he might have recovered from the defendant. Instead of that, he preferred to allow a foreclosure to take place and to have his purchaser evicted, and then to pay the damages sustained by the breach of his covenant of warranty. So far as the damages were thus augmented by his own delay, he ought not, on general principles of law, to recover. (*Hamilton* v. *McPherson*, 28 N. Y., 72.) The principle, as there applied to an ordinary breach of contract, extends to all causes of action, whether based on contract or tort. Says Parsons in his book on Contracts (vol. 2, 771 [5th ed.]): "If there be a fraud and it be actually injurious, the injured party can recover only the damage directly attributable to the fraud, and not an increase of this damage caused by his own indiscretion or mistake in relation

to it," citing cases. At the moment the fraud was discovered, the plaintiff might have recovered complete indemnity in the way pointed out; or, he might have recovered the difference in value of the farm, as it was represented to be and as it really was, and that was the amount of the mortgage with the interest. (*Haight* v. *Hayt,* 19 N. Y., 471.)

From another point of view, it may be shown that substantial damages were recoverable from the time when the fraud was committed. This is not an action against a seller of property for fraudulent representations as to the subject-matter of the sale; and, accordingly, not a case in which the contract could be rescinded. As far as the case shows, McCarty was not privy to the fraud, either personally or through the agency of the defendant. The facts present the bald case of a vendor innocently selling land at an extravagant price, the purchaser being induced to acquire the property by the fraudulent representations of an incumbrancer, made *for his own advantage*, and not, apparently, as agent for the seller. The plaintiff had thus entered into a burdensome contract, which he had no power to cancel, being absolutely bound by his contract with McCarty. He had thus paid and was under binding engagements to pay $1,500 more than the value of the property. If this is not a case of substantial damages, it would be difficult to say what would be.

The cases cited by the plaintiff do not conflict with these views. *Bonomi* v. *Backhouse* (1 Ellis, Black. & Ellis, 622, 646), was a special case, having no application to the present. It grew out of the duty of an adjoining owner of land in its natural state not to deprive the neighboring land of its natural right of support. The defendant had made excavations on his own land, at some distance from that of the plaintiff. Some time afterward, the plaintiff's land, by reason of the excavation, subsided. The question was, whether the statute of limitations began to run from the time of the excavation or that of the subsidence? The case was a novel one, and the early decisions of it did not clearly seize on the principle. The court held that the statute commenced to run

from the time of the subsidence. The theory, as finally estab-
lished in the House of Lords, was, that the plaintiff's right was
not violated by the excavation. This act was exercised on the
defendant's own land where he had a right to dig. It was
the *failure of the support* which violated the plaintiff's right,
and that violation occurred, when, on the withdrawal of such
support, the land, obeying the law of gravitation, subsided.
Lord CRANWORTH said : "I think that the error in the view
which has been taken in certain quarters upon this subject is
this : it was supposed that the party whose land was interfered
with had a right to what is called the pillars or support. In
truth, his right was to the ordinary enjoyment of his land,
and till that ordinary enjoyment was interfered with, he had
nothing to complain of. It appears very analogous to this
sort of case : Suppose a slander to be uttered which is
not actionable in itself, but under which special damage
may arise and does arise to somebody afterward ; from
what date is the person complaining of that special damage
to be limited according to the statute of limitations? Clearly,
not from the uttering of the slanderous words, because
they were innocent in themselves, but it was only when the
subsequent damage occurred that the action would arise."
The lord chancellor and Lord WENSLEYDALE expressed simi-
lar opinions. (7 Lond. Jurist [N. S.], 809, 810.) It is plain
that a case decided on the ground that *no right* was violated
at the time of excavation, has nothing to do with a case where
the whole cause of action rests on a breach of duty occurring
when the contract was formed. *Whitehouse* v. *Fellowes* (10
C. B. [N. S.], 765) was the case of a continuing wrongful act.
Trustees of a road had, by their negligent act, so constructed
a drain that on each occasion of a heavy storm the water
would flood the plaintiff's land and cause him injury. The
court held that on the occasion of successive floodings succes-
sive causes of action arose, to which the statute of limitations
separately attached. The act was in the nature of a continu-
ing nuisance, and fell within the rule that a continuance of a
nuisance is a fresh nuisance and gives a new cause of action.

*McConnel* v. *Kibbe* (33 Ill., 175) belongs to the same class of cases in its principle. *Bank of Hartford* v. *Waterman* (26 Conn., 324) does not favor the plaintiff. The decision is expressly placed on the ground that the defendant, in that case, was a public officer, and that there was a distinction between breaches of public duty and breaches of duty to individuals. The court expressly maintains that in the latter case the right of action follows immediately upon the breach of duty. (See opinion of STORRS, Ch. J., delivering the judgment of the court, on pages 335, 336.)

Finally, the plaintiff urges that the bond of Stoddard, who, as mortgagor, executed the mortgage to Fellows, was primarily to be resorted to as a means of paying the amount due on the Fellows mortgage; and as Stoddard may have been solvent, the plaintiff was not shown to have been really injured when the fraud was committed. If this were true, it would not answer the view that the cause of action accrued, when the fraud was committed, on the basis of nominal damages. The position, however, cannot apparently be maintained. As far as can be judged, from the meager statement of facts, Stoddard was the original owner and mortgaged to Fellows. Stoddard then conveyed to the defendant, who sold to McCarty and took a mortgage for the purchase-money. The defendant apparently purchased, subject to the Stoddard mortgage. In that case the mortgagor would be a surety and the land the primary fund for the payment of the Stoddard mortgage, both in the hands of the defendant and of his grantee, McCarty. (*Tice* v. *Annin*, 2 Johns. Ch., 125; *McKinstry* v. *Curtis*, 10 Paige, 503; *Vanderkemp* v. *Shelton*, 11 id., 28; *Mathews* v. *Aikin*, 1 N. Y., 595.) The plaintiff would stand as a purchaser of the land in McCarty's place, and would have no right to insist that the mortgage debt should, as a matter of equity, be enforced against Stoddard rather than against the land. This point was not made in the court below. If it had been, it might have appeared that the defendant, when he purchased of Stoddard, assumed the payment of the mortgage which would have, beyond all doubt,

have converted Stoddard into a mere surety, and have left the land primarily liable for the debt. (*Russell* v. *Pistor*, 7 N. Y. [3 Seld.], 171 ; *Halsey* v. *Reed*, 9 Paige, 446 ; *Marsh* v. *Pike*, 10 id., 595.)

On the whole the judgment should be affirmed.

All concur.

Judgment affirmed.