[944 NYS2d 30]

COBALT PARTNERS, L.P., et al., Appellants, v GSC CAPITAL CORP., Defendant, and GSCP (NJ), L.P., et al., Respondents.

First Department, May 1, 2012

## APPEARANCES OF COUNSEL

*Seward & Kissel LLP*, New York City (*M. William Munno* and *Walter A. Naeder* of counsel), for appellants.

*Davis Polk & Wardwell LLP*, New York City (*Robert F. Wise, Jr., Jonathan D. Martin* and *Sarah M. Egan* of counsel), for respondents.

## OPINION OF THE COURT

MOSKOWITZ J.

On August 31, 2010, subsequent to oral argument, but while the case was sub judice, defendants filed for bankruptcy and therefore this case became subject to the automatic stay of litigation pursuant to section 362 of the Bankruptcy Code (11 USC). On March 28, 2012, the parties notified this Court that the United States Bankruptcy Court for the Southern District of New York had lifted the stay. Thus, we may now release our decision.

Because this is an appeal from the grant of a motion to dismiss and plaintiffs have alleged facts sufficient to meet the strict standard for piercing the corporate veil under New York law, we reverse so much of the order below as dismissed the cause of action for breach of written contract against GSC Group, Inc. (Group). We affirm in all other respects.

We derive the facts from the allegations in the second amended complaint and other documents in the record. Plaintiffs bring this action to rescind the private placement purchase of $4 million of restricted shares of defendant GSC Capital Corp. (the Fund), a real estate investment trust (REIT). Defendant GSCP (NJ), L.P. owns a minority of the Fund's stock and is its investment adviser. GSCP is an affiliate or subsidiary of defendant Group, that also has a minority investment in the Fund.

Around June 6, 2005, Wayne Cooperman on behalf of plaintiffs met with nonparties Fred Horton, Thomas Inglesby, Daniel Castro and Joe Wender at plaintiffs' office in New York City. At the time of the meeting, Group employed Horton, Inglesby and Castro. Wender was a member of Group's advisory board.

At the meeting, Group's employees solicited Cooperman to purchase restricted shares of the Fund in a private placement. Horton, Inglesby, Castro and Wender allegedly represented that they would "cause a registration statement to be filed" for the Fund within six months of the private placement and would use

commercially reasonable efforts to cause the registration statement to become effective. This representation was material because, once effective, registration would enable purchasers to sell their shares on a national securities exchange. Allegedly in reliance on this promise, plaintiffs agreed to purchase $4 million of the Fund's restricted shares.

In connection with the meeting, Cooperman received a copy of a preliminary offering memorandum dated May 31, 2005. In the preliminary offering memorandum, only the Fund agreed to file a registration statement within 181 days of the closing of the offering and to use commercially reasonable efforts to cause the registration statement to become effective.

Subsequently, Cooperman received an offering memorandum dated June 23, 2005. This second offering memorandum contained the same promise as the preliminary offering memorandum concerning the registration statement. Notably, the offering memorandum describes GSCP, GSC Partners (the predecessor to Group) and the Fund as closely related entities, and, at one point, describes "GSC Partners" as the " 'doing business as' name of several related entities, including GSCP." The offering memorandum also states that initially the Fund would have no employees, but would operate through its manager (GSCP), and that "each of our executive officers is also an officer of our Manager or one of its affiliates."

Allegedly in reliance on Group's and the Fund's promises to register or cause to register the Fund's shares, plaintiffs purchased $4 million in restricted shares (160,000 shares at $25 per share) on or about June 24, 2005.

As purchasers in the private placement, plaintiffs were required to sign a subscription agreement. The subscription agreement states:

> "In making the decision to purchase the Common Stock, the undersigned relied solely on the information set forth in the Offering Memorandum [defined to include both the May 31, 2005 preliminary offering memorandum and the final offering memorandum] and any other information obtained by the undersigned directly from the Company [i.e., the Fund] as a result of any inquiries by the undersigned or the undersigned's advisor(s)."

The subscription agreement also incorporates the terms of the registration rights agreement:

"The undersigned acknowledges having received a copy of the form of registration rights agreement attached as Annex IV to the Offering Memorandum . . . and agrees to be bound by and acknowledges being entitled to the benefits of the terms and provisions thereof as if the same has been duly executed by the undersigned."

The registration rights agreement contains a merger clause.

The private placement of the Fund's restricted stock closed on July 11, 2005. On or about January 27, 2006, the Fund filed a registration statement with the SEC. On December 6, 2007, the Fund withdrew the registration statement. On January 23, 2008, the Fund announced that it was in financial difficulty.

Meanwhile, on September 4, 2007, plaintiffs commenced this action. The thrust of their second amended complaint, filed on April 22, 2008, is that Group purposefully failed to cause the registration statement to become effective. Plaintiffs ascribe an alleged motive for this failure. In January 2006, the Fund's shares were worth less than $25 per share, a value that would have required repurchase with proceeds from the public offering. Because the management fee was based on a percentage of the total equity under management, this repurchase would have reduced the assets under management by allegedly $680 million with the concomitant reduction in the management fees of Group's subsidiary, GSCP. Plaintiffs allege because Group did not want to lose these management fees, it stalled the filing of the registration statement so there would be no repurchase. In the second amended complaint, plaintiffs sued: (1) Group for breach of oral contract; (2) all defendants for breach of a written contract, namely, the offering memorandum and the registration rights agreement; and (3) Group for fraudulent omission.

The Fund answered the second amended complaint. Group and GSCP moved to dismiss it pursuant to CPLR 3211 (a) (1), (5) and (7). The motion court granted the motion to dismiss.

■ Law of the case did not require the court to deny the motion to dismiss the second amended complaint, even though it had previously denied the motion to dismiss the amended complaint (*see generally People v Evans*, 94 NY2d 499, 502 [2000]). Law of the case is a discretionary doctrine (*id*. at 503), and the second amended complaint differed from the amended complaint.

■ The court should have allowed the second cause of action for breach of written contract to proceed against Group because

plaintiffs have alleged just enough facts that, if true, are sufficient to satisfy New York's strict standard for veil piercing in breach of contract cases.[1]

New York law disfavors disregard of the corporate form. Accordingly, "piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury" (*Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 141 [1993]). Plaintiffs have alleged as the first prong that Group "exercise[d] complete domination and control over" the Fund, which was "entirely dependent upon GSC Group for its business operations." There is ample evidence in the record to support Group's domination and control. For instance, the offering memorandum describes the Fund as having no employees and operating through GSCP, while GSCP in turn is described as a "doing business as" name for Group. However, in *TNS Holdings v MKI Sec. Corp.* (92 NY2d 335, 339 [1998]), the Court of Appeals rejected the notion that control alone is sufficient to tie a nonsignatory to contractual obligations:

> "Those seeking to pierce a corporate veil of course bear a heavy burden of showing that the corporation was dominated as to the transaction attacked and that such domination was the instrument of fraud or otherwise resulted in wrongful or inequitable consequences. *Evidence of domination alone does not suffice without an additional showing that it led to inequity, fraud or malfeasance*" (emphasis added; citations omitted).

Accordingly, cases following *TNS Holdings* have dismissed complaints seeking to hold a parent liable for the contractual obligations of its subsidiary or affiliate "unaccompanied by allegations of consequent wrongs" (*UMG Recs., Inc. v FUBU Records, LLC*, 34 AD3d 293, 294 [2006]; *see also Sound Communications, Inc. v Rack and Roll, Inc.*, 88 AD3d 523, 524 [2011]; *Prichard v 164 Ludlow Corp.*, 49 AD3d 408, 409 [2008];

---

1. The Fund is a Maryland corporation, and therefore, Maryland law arguably applies to the issue of whether to pierce its veil to hold Group liable on the Fund's written contract (*see e.g. Klein v CAVI Acquisition, Inc.*, 57 AD3d 376, 377 [2008]). However, because the parties have cited only New York law, we apply that law (*see e.g. M&A Oasis v MTM Assoc.*, 307 AD2d 872, 874 [2003]).

*Brainstorms Internet Mktg. v USA Networks*, 6 AD3d 318 [2004]; *Hartej Corp. v Pepsico World Trading Co.*, 255 AD2d 233 [1998]).

Citing several federal cases, plaintiffs argue merely that Group dominated and controlled the Fund. As the above cases from this Court demonstrate, domination and control alone are insufficient to pierce the corporate veil. Fortunately for plaintiffs, their complaint contains allegations sufficient to allege the second prong, i.e., that Group misused the corporate form to commit a wrong. In particular, paragraph 104 of the second amended complaint states: "Through its domination and control, [Group] caused [the Fund] to breach the Offering Memorandum and Registration Rights Agreement with respect to the Registration Obligation." Under a liberal reading, the complaint also alleges that Group, as the alter ego of the Fund, failed to cause the registration statement to become effective because the notes were worth less than $25 dollars per share, and once registered, the Fund would have to repurchase them, thereby causing Group to lose money. To use domination and control to cause another entity to breach a contractual obligation for personal gain is certainly misuse of the corporate form to commit a wrong. Accordingly, the court should not have dismissed the second cause of action for breach of written contract against Group (*see ABN Amro Bank, N.V. v MBIA Inc.*, 17 NY3d 208, 229 [2011] ["plaintiffs' allegations that MBIA Inc. abused its control of its wholly-owned subsidiary, MBIA Insurance, by causing it to engage in harmful transactions that now shield billions of dollars in assets from plaintiffs and expose them to significant liability meet this test"]). As plaintiffs directed their veil-piercing allegations against Group only, we affirm so much of the order as dismissed this claim against GSCP.[2]

Because the allegations against Group, as the alter ego of the Fund, are sufficient to state a cause of action for breach of the written contract, the first cause of action, for breach of oral contract, is duplicative. However, it was also proper to dismiss the claim alleging breach of oral contract because the alleged

---

2. We note that plaintiffs had originally asserted the second cause of action against GSCP as well as Group, and that plaintiffs' notice of appeal purports to be from the motion court's order in its entirety. However, in their briefs, plaintiffs do not mention GSCP separate from Group, and thus plaintiffs have waived any separate argument they may have had with respect to GSCP (*see Davis v School Dist. of City of Niagara Falls*, 4 AD3d 866, 867 [2004]).

oral agreement contradicts terms in the written documents. Breach of oral contract, asserted against Group alone, claims Group's breach of the alleged oral agreement at the June 6, 2005 meeting caused the Fund to file a registration statement with the SEC and caused that statement to become effective. Although there is a standard merger clause in the registration rights agreement accompanying this transaction, defendants stated at oral argument before the motion court that "[w]e are not arguing today that the merger agreement bars the first cause of action." Therefore, we do not consider the merger clause in the registration rights agreement as a basis for dismissing plaintiffs' claim for breach of oral contract.

However, we can consider the subscription agreement. The subscription agreement states that "[i]n making the decision to purchase the Common Stock, [plaintiffs] relied solely on the information set forth in the Offering Memorandum and any other information obtained by [plaintiffs] directly from" the Fund. Accordingly, plaintiffs expressly disclaimed reliance on any representations other than those they received from the Fund alone and cannot now complain that Group made them some sort of independent promise. Plaintiffs' signature does not appear on the copy of the subscription agreement in the record on appeal, and counsel for plaintiffs denied at oral argument that plaintiffs had signed it. However, plaintiffs do not dispute that they could not have become investors without signing the subscription agreement. Nor have plaintiffs come forward with a different copy of the subscription agreement that lacks this language, while the very copy they attach to their complaint contains it.

Because the terms of the subscription agreement preclude plaintiffs' reliance on anything Group may have allegedly represented, we need not address Group's remaining arguments as to why the breach of oral contract claim must fail.

■ It was also proper to dismiss the third cause of action alleging fraud. This claim, asserted against Group only, does not rely on the theory that Group made a promise with no intent to perform, but rather is based on allegedly fraudulent omissions. Plaintiffs allege that Group "failed to disclose that they could decide to delay indefinitely efforts to cause the registration statement to become effective if the Fund's Restricted Shares could not be offered for a price of at least $25 per share or if they judged market conditions not to be favorable."

"[A]n omission does not constitute fraud unless there is a fiduciary relationship between the parties" (*SNS Bank v Citi-*

*bank*, 7 AD3d 352, 356 [2004]). Here, there are no allegations that this transaction was anything more than at arm's length, between sophisticated commercial parties who had their own advisors. Moreover, in the offering memorandum, the Fund specifically warns that "[t]here are conflicts of interest in our relationship with our Manager and/or GSC Partners, which could result in decisions that are not in the best interests of our stockholders and our noteholders." Given this language, plaintiffs had clear notice that they needed to protect their own interests (*see Arfa v Zamir*, 17 NY3d 737, 739 [2011]).

Finally, *Bullmore v Ernst & Young Cayman Is.* (45 AD3d 461 [2007]), upon which plaintiffs rely heavily, is inapposite. There, where the defendant was the investment manager of certain hedge funds, the liquidators for the funds sued for violation of fiduciary duties owed to those funds. The case does not stand for the proposition that a manager for an entity like a hedge fund or, as here, a REIT, has any duties to the individual investors in the funds it manages. Moreover, even if an investment advisor to an entity like the Fund could ever be held liable for breach of fiduciary duty or fraud to the *investors* of that entity, Group was *not* the Fund's investment advisor; GSCP was. Plaintiffs do not assert the third cause of action against GSCP.

We have considered plaintiffs' remaining contentions and find them unavailing.

Accordingly, the order of the Supreme Court, New York County (Charles E. Ramos, J.), entered February 2, 2009, which granted the motion of defendants GSC Group, Inc. and GSCP (NJ), L.P. to dismiss the second amended complaint as against them, should be modified, on the law, to deny the motion as to the second cause of action alleging breach of written contract against GSC Group, Inc., and otherwise affirmed, without costs.

SAXE, J.P., CATTERSON, DEGRASSE and ABDUS-SALAAM, JJ., concur.

Order, Supreme Court, New York County, entered February 2, 2009, modified, on the law, to deny the motion as to the second cause of action alleging breach of written contract against Group, and otherwise affirmed, without costs.