[982 NE2d 576, 958 NYS2d 656]

Steve Pappas et al., Respondents, v Steve Tzolis, Appellant, et al., Defendant.

Argued October 11, 2012; decided November 27, 2012

### POINTS OF COUNSEL

*Pillsbury Winthrop Shaw Pittman LLP*, New York City (*E. Leo Milonas, Frederick A. Brodie* and *Peter Ostrovski* of counsel), and *Ellenoff Grossman & Schole LLP*, New York City (*Eric S. Weinstein* and *Yong Hak Kim* of counsel), for appellant. The Appellate Division erred in holding that, in a buyout of two LLC members' interests by the third member, the sellers could sue for breach of fiduciary duty, conversion, fraud and unjust enrichment after the sellers certified that the buyer had "no fiduciary duty" to them and they were "not relying on any representation" by the buyer. (*Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V.*, 17 NY3d 269; *Arfa v Zamir*, 17 NY3d 737; *Seippel v Jenkens & Gilchrist, P.C.*, 341 F Supp 2d 363; *Asian Vegetable Research & Dev. Ctr. v Institute of Intl. Educ.*, 944 F Supp 1169; *Blue Chip Emerald v Allied Partners*, 299 AD2d 278; *Palmetto Partners, L.P. v AJW Qualified Partners, LLC*, 83 AD3d 804; *Everett v Phillips*, 288 NY 227; *Dobroshi v Bank of Am., N.A.*, 65 AD3d 882; *Northeast Gen. Corp. v Wellington Adv.*, 82 NY2d 158; *JFK Family Ltd. Partnership v Millbrae Natural Gas Dev. Fund 2005, L.P.*, 89 AD3d 684.)

*Carl E. Person*, New York City, for respondents. The First Department was correct in holding that in a buyout of two LLC members' interests by the third member, the sellers could sue for breach of fiduciary duty, conversion, fraud and unjust enrichment after the sellers certified in closing documents that the buyer had "no fiduciary duty" to them and they were "not relying on any representation" by the buyer. (*Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V.*, 76 AD3d 310, 17 NY3d 269; *Blue Chip Emerald v Allied Partners*, 299 AD2d 278; *Everett v Phillips*, 288 NY 227.)

**OPINION OF THE COURT**

PIGOTT, J.

Plaintiffs Steve Pappas and Constantine Ifantopoulos along with defendant Steve Tzolis formed and managed a limited liability company (LLC), for the purpose of entering into a long-term lease on a building in Lower Manhattan. Pappas and Tzolis each contributed $50,000 and Ifantopoulos $25,000, in exchange for proportionate shares in the company. Pursuant to a January 2006 Operating Agreement, Tzolis agreed to post and maintain in effect a security deposit of $1,192,500, and was permitted to sublet the property. The Agreement further provided that any of the three members of the LLC could "engage in business ventures and investments of any nature whatsoever, whether or not in competition with the LLC, without obligation of any kind to the LLC or to the other Members."

Numerous business disputes among the parties ensued. In June 2006, Tzolis took sole possession of the property, which was subleased by the LLC to a company he owned, for approximately $20,000 per month in addition to rent payable by the LLC under the lease. According to plaintiffs, they "reluctantly agreed to do this, because they were looking to lease the building and Tzolis was obstructing this from happening." Pappas, who wanted to sublease the building to others, alleges that Tzolis "not only blocked [his] efforts, he also did not cooperate in listing the Property for sale or lease with any New York real estate brokers." Moreover, Pappas claims that Tzolis "had not made, and was not diligently preparing to make, the improvements . . . required to be made under the Lease. Tzolis was also refusing to cooperate in [Pappas's] efforts to develop the Property." Further, Tzolis's company did not pay the rent due.

On January 18, 2007, Tzolis bought plaintiffs' membership interests in the LLC for $1,000,000 and $500,000, respectively. At closing, in addition to an Agreement of Assignment and Assumption, the parties executed a Certificate in which plaintiffs represented that, as sellers, they had "performed their own due diligence in connection with [the] assignments . . . engaged [their] own legal counsel, and [were] not relying on any representation by Steve Tzolis[,] or any of his agents or representatives, except as set forth in the assignments & other documents delivered to the undersigned Sellers today," and that "Steve Tzolis has no fiduciary duty to the undersigned Sellers in connection with [the] assignments." Tzolis made reciprocal representations as the buyer.

In August 2007, the LLC, now owned entirely by Tzolis, assigned the lease to a subsidiary of Extell Development Company for $17,500,000. In 2009, plaintiffs came to believe that Tzolis had surreptitiously negotiated the sale with the development company before he bought their interests in the LLC.

Plaintiffs commenced this action against Tzolis in April 2009, claiming that, by failing to disclose the negotiations with Extell, Tzolis breached his fiduciary duty to them. They alleged, in all, 11 causes of action.

Tzolis moved to dismiss plaintiffs' complaint. Supreme Court dismissed the complaint in its entirety, citing the Operating Agreement and Certificate. A divided Appellate Division modified Supreme Court's order, allowing four of plaintiffs' claims to proceed—breach of fiduciary duty, conversion, unjust enrichment, and fraud and misrepresentation—while upholding the dismissal of the rest of the complaint (87 AD3d 889 [1st Dept 2011]). The dissenting Justices would have dismissed all the causes of action, relying on our recent decision in *Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V.* (17 NY3d 269 [2011]).

The Appellate Division granted Tzolis leave to appeal, certifying the question whether its order was properly made (2012 NY Slip Op 61541[U] [2012]). We now answer the certified question in the negative, and reverse.

In their first cause of action, plaintiffs claim that Tzolis was a fiduciary with respect to them and breached his duty of disclosure. Tzolis counters that plaintiffs' claim fails to state a cause of action because, by executing the Certificate, they expressly released him from all claims based on fiduciary duty.

In *Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V.,* we held that "[a] sophisticated principal is able to release its fiduciary from claims—at least where . . . the fiduciary relationship is no longer one of unquestioning trust—so long as the principal understands that the fiduciary is acting in its own interest and the release is knowingly entered into" (*Centro Empresarial Cempresa S.A.,* 17 NY3d at 278). Where a principal and fiduciary are sophisticated entities and their relationship is not one of trust, the principal cannot reasonably rely on the fiduciary without making additional inquiry. For instance, in *Centro Empresarial Cempresa S.A.,* plaintiffs—seasoned and counseled parties negotiating the termination of their relationship—knew that defendants had not supplied them with the

financial information to which they were entitled, triggering "a heightened degree of diligence" (*id.* at 279). In this context, "the principal cannot blindly trust the fiduciary's assertions" (*id.*). The test, in essence, is whether, given the nature of the parties' relationship at the time of the release, the principal is aware of information about the fiduciary that would make reliance on the fiduciary unreasonable.

■ Here, plaintiffs were sophisticated businessmen represented by counsel. Moreover, plaintiffs' own allegations make it clear that at the time of the buyout, the relationship between the parties was not one of trust, and reliance on Tzolis's representations as a fiduciary would not have been reasonable. According to plaintiffs, there had been numerous business disputes, between Tzolis and them, concerning the sublease. Both the complaint and Pappas's affidavit opposing the motion to dismiss portray Tzolis as uncooperative and intransigent in the face of plaintiffs' preferences concerning the sublease. The relationship between plaintiffs and Tzolis had become antagonistic, to the extent that plaintiffs could no longer reasonably regard Tzolis as trustworthy. Therefore, crediting plaintiffs' allegations, the release contained in the Certificate is valid, and plaintiffs cannot prevail on their cause of action alleging breach of fiduciary duty.

Practically speaking, it is clear that plaintiffs were in a position to make a reasoned judgment about whether to agree to the sale of their interests to Tzolis. The need to use care to reach an independent assessment of the value of the lease should have been obvious to plaintiffs, given that Tzolis offered to buy their interests for 20 times what they had paid for them just a year earlier.

■ Plaintiffs' cause of action alleging fraud and misrepresentation must be dismissed for similar reasons. Plaintiffs principally allege that Tzolis represented to them that he was aware of no reasonable prospects of selling the lease for an amount in excess of $2,500,000. However, in the Certificate, plaintiffs "in the plainest language announced and stipulated that [they were] not relying on any representations as to the very matter as to which [they] now claim[ ] [they were] defrauded" (*Danann Realty Corp. v Harris*, 5 NY2d 317, 320 [1959]). Moreover, while it is true that a party that releases a fraud claim may later challenge that release as fraudulently induced if it alleges a fraud separate from any contemplated by the release (*see Centro Empresarial Cempresa S.A.*, 17 NY3d at

276), plaintiffs do not allege that the release was itself induced by any action separate from the alleged fraud consisting of Tzolis's failure to disclose his negotiations to sell the lease.

Plaintiffs' conversion claim is that Tzolis appropriated to himself, without authority, plaintiffs' membership interests in the LLC. "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights" (*Colavito v New York Organ Donor Network, Inc.*, 8 NY3d 43, 50 [2006] [citations omitted]). Here, since Tzolis had purchased plaintiffs' interests in the LLC, there could be no interference with their property rights. Therefore, the conversion claim must be dismissed.

Finally, we reject plaintiffs' claim that Tzolis unjustly enriched himself at their expense. The doctrine of unjust enrichment invokes an "obligation imposed by equity to prevent injustice, *in the absence of an actual agreement between the parties concerned*" (*IDT Corp. v Morgan Stanley Dean Witter & Co.*, 12 NY3d 132, 142 [2009] [emphasis added]). "[A] party may not recover in . . . unjust enrichment where the parties have entered into a contract that governs the subject matter" (*Cox v NAP Constr. Co., Inc.*, 10 NY3d 592, 607 [2008]). Because the sale of interests in the LLC was controlled by contracts— the Operating Agreement, the Agreement of Assignment and Assumption, and the Certificate—the unjust enrichment claim fails as a matter of law.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, with costs, plaintiffs' complaint dismissed in its entirety, and the certified question answered in the negative.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ and SMITH concur.

Order, insofar as appealed from, reversed, etc.