■ Kyle Connaughton, Appellant, v Chipotle Mexican Grill, Inc., Respondents. [23 NYS3d 216]—

Order, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered January 29, 2014, which granted defendants Chipotle Mexican Grill, Inc. and Steven Ells's motion to dismiss the complaint asserting claims for fraudulent inducement and unjust enrichment, affirmed, without costs.

Plaintiff, a well-known chef, alleges that in 2010 he sold his concept of a fast food restaurant chain serving ramen cuisine to defendants Chipotle Mexican Grill, Inc., and its founder and CEO, Steven Ells.* Plaintiff was then hired as an at-will employee to bring the concept to fruition. He was compensated through an employment contract providing a base salary and the promise that after working with defendants for three years on the project, he would receive a substantial amount of equity in the form of company stock. By its terms, plaintiff was restricted from working on ramen-related projects other than with defendants.

The complaint indicates that a considerable amount of work was done over the next year and a half. At the end of his first year, plaintiff received a full annual bonus and additional stock grants. Defendants informed him that the plan was to open the new restaurants in 2012. A lease was signed in September 2012 for a Manhattan-based flagship store.

In October 2012 plaintiff claims he learned from other Chipotle executives that in 2008 Ells had entered into a confidential agreement with David Chang, the owner of Momofuku Noodle Bar, to develop a ramen restaurant concept. Chang worked on the design for what ultimately became defendants' Washington D.C. flagship ramen cuisine restaurant called ShopHouse. However, the Chang-Ells agreement, containing nondisclosure provisions that have remained in force, fell apart when the parties were unable to agree on financial terms. Although Chang never agreed that his design work could be used for ShopHouse, according to the Chipotle executives, Ells "simply converted" Chang's work, without payment, to open ShopHouse. The Chipotle executives stated that Momofuku would sue Chipotle once Ells opened the ramen restaurant that plaintiff had developed.

Plaintiff confronted Ells with this information. Ells did not

---

* All factual allegations are taken from the complaint unless otherwise noted.

deny the previous business dealings. Instead, he "stunned" plaintiff by ordering him to proceed with the ramen concept, even knowing "it would end in litigation." Shortly thereafter, in November 2012, defendants terminated plaintiff's employment. Officially, he was terminated on the ground that he was engaged in outside work, which plaintiff disputes, and because Ells had lost confidence in the ramen project.

The complaint alleges two causes of action against defendants: fraudulent inducement and unjust enrichment. In sum, it alleges that defendants fraudulently induced plaintiff to work with them by purposefully withholding the existence of the nondisclosure agreement and earlier business agreement with Momofuku, material facts which defendants had a duty to reveal. According to the complaint, had plaintiff known of the defendants' prior dealings with Chang, plaintiff would never have accepted employment with Chipotle because the Momofuku agreement "substantially impacted [plaintiff's] ability to implement his own ramen concept with Mr. Ells." The complaint supposes that during the back and forth discussions with defendants during the development of the concept, the Chipotle staff must have communicated information and ideas that had originally come from Momofuku, thus violating the nondisclosure agreement, and also creating the appearance that plaintiff had stolen Momofuku's ramen concept. It also alleges that defendants received the benefit of his ramen concept without compensating him for it, as he did not receive the promised company stock. Plaintiff seeks compensatory damages in the form of a sum equal to his claimed Chipotle equity and his lost business opportunities. He also seeks punitive damages.

Plaintiff now appeals the dismissal of his complaint pursuant to CPLR 3211 (a) (7).

To state a legally cognizable claim of fraudulent inducement based on a misrepresentation or omission, the complaint must allege that the defendant intentionally made a material misrepresentation of fact in order to defraud or mislead the plaintiff, and that the plaintiff reasonably relied on the misrepresentation and suffered damages as a result (*see Oxbow Calcining USA Inc. v American Indus. Partners*, 96 AD3d 646, 650 [1st Dept 2012]; *see also Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553, 559 [2009]).

Unlike our dissenting colleagues, we conclude that the motion court properly dismissed the claim for fraudulent inducement. Curiously, plaintiff's complaint posits what would be his defense to any potential litigation brought by Chang had he gone forward with defendants' plans and fully carried out the

ramen restaurant concept. In particular, it reveals that plaintiff has not been accused of stealing Chang's and Momofuku's ramen concept and that his professional reputation has not been tarnished. Plaintiff does not dispute that he received his agreed-upon salary and an annual bonus. He received what he contracted for in the employment agreement and has no ground to allege wrongful termination.

The facts alleged, even when viewed in a light most favorable to plaintiff, do not give rise to a reasonable inference that he sustained calculable damages based on defendants' actions. Plaintiff's employment was at will, and he has no claim of reasonable reliance on representations concerning continued employment (see *Meyercord v Curry*, 38 AD3d 315, 316-317 [1st Dept 2007]; *Tannehill v Paul Stuart, Inc.*, 226 AD2d 117 [1st Dept 1996]). Any claim that he was deprived of the promised Chipotle stock cannot succeed, given that is undisputed that the express terms of the parties' agreement required him to be an employee for three years. Nor can he seek damages based on the alleged profits that would have been realized had there been no fraud. When a claim sounds in fraud, the measure of damages is governed by the "out-of-pocket" rule, which states that the measure of damages is "indemnity for the actual pecuniary loss sustained as the direct result of the wrong" (*Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421 [1996]; see *Rather v CBS Corp.*, 68 AD3d 49, 58 [1st Dept 2009], *lv denied* 13 NY3d 715 [2010] [explaining that under *Lama Holding Co.*, plaintiff Rather was "required to plead that he had something of value, was defrauded by CBS into relinquishing it for something of lesser value, and that the difference between the two constituted (his) pecuniary loss"]). In other words, damages are calculated to compensate plaintiffs for what they lost because of the fraud, not for what they might have gained in the absence of fraud (*Lama Holding Co.* at 421). Additionally, plaintiff's claim that he would have received better remuneration had he partnered with a different entity is inherently speculative and would require any factfinder to engage in conjecture (see *Geary v Hunton & Williams*, 257 AD2d 482, 482 [1st Dept 1999]).

The dissent suggests that the pleadings sufficiently support a reasonable inference that defendants' conduct *may* cause plaintiff compensable damages, in particular, that plaintiff *may* suffer injury to his professional reputation, and incur future legal expenses defending himself. However, "[t]he true measure of damage is indemnity for the actual pecuniary loss *sustained* as the direct result of the wrong" (*Lama Holding Co.*

*v Smith Barney* at 421 [internal quotation marks and citation omitted; emphasis added]). The loss is computed by ascertaining the "difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or *value of the consideration exacted* as the price of the bargain" (*Lama Holding Co.* at 421 [internal quotation marks and citation omitted; emphasis added]). There are no allegations here that lead to the inference that plaintiff's reputation has been damaged, or that he has accrued defense-related legal fees, or has endured any other type of compensable injury.

For instance, in *Caruso, Caruso & Branda, P.C. v Hirsch* (41 AD3d 407 [2d Dept 2007]), cited by the dissent, the proposed counterclaim complaint alleged that in the underlying matrimonial action, the law firm should have filed a notice of pendency as to several properties that the matrimonial court had directed be transferred from the husband into the wife's name, when also directing that judgment in the divorce action was to be settled. Before judgment was entered, the properties became subject to bankruptcy proceedings brought by the husband and a family trust; the bankruptcy court held that the wife's interest in the properties never vested. The Second Department ruled that the wife's proposed amended counterclaim complaint sufficiently suggested that she had suffered damages attributable to the law firm's alleged malpractice (41 AD3d at 409-410).

Here, in contrast, the allegations at best suggest that, depending on the future actions of Chang and Momufuko, plaintiff might suffer injury. Not only is there no suggestion or indication that actual pecuniary damages were sustained (*see Hanlon v Macfadden Publs.*, 302 NY 502, 510 [1951] [a claim of actual injury or damage is an essential element in a claim of fraud]), but the complaint does not allege facts from which actual damages can be inferred (*cf. Black v Chittenden*, 69 NY2d 665, 668 [1986] [elements of fraud claim were sufficiently pleaded, and damages could be inferred by allegations of deterioration to the bowling alleys and the need for extensive repairs, despite assurances that the lanes were in good shape, and the damage was not visible to an untrained eye]).

The dissent posits that plaintiff should be entitled to pursue nominal damages. We note that plaintiff himself made no such claim in his complaint and did not advance such an argument either in the motion court or on appeal. Nor do we agree that plaintiff is or would be entitled to nominal damages (*see Kronos, Inc. v AVX Corp.*, 81 NY2d 90, 95, 96 [1993] [declining to "import( )" the legal fiction of nominal damages from contract

law into a tort claim, because "(i)n tort . . . there is no enforceable right until there is loss," and a claim of nominal damages when no loss has accrued "wrest(s) the cause of action (in tort) from its traditional purposes—the compensation of *losses*—and (uses it) to vindicate nonexistent or amorphous inchoate rights"]). To the extent *Clearview Concrete Prods. Corp. v S. Charles Gherardi, Inc.* (88 AD2d 461, 470 [2d Dept 1982]), cited by our dissenting colleagues, holds otherwise, we choose not to follow it. To the extent the nineteenth century cases, *Pryor v Foster* (130 NY 171, 178 [1891]) and *Northrop v Hill* (57 NY 351, 354 [1874]), hold otherwise, we believe the current rule is that voiced in *Kronos*.

Plaintiff only alleges that he will suffer injury in the future. This is "undeterminable and speculative," and such claims are not compensable (*Lama Holding Co.* at 422, citing *Dress Shirt Sales v Hotel Martinique Assoc.*, 12 NY2d 339, 344 [1963]; *see Goldsmith v Fight For Sight*, 251 AD2d 120, 120 [1st Dept 1998]).

Because plaintiff has not sufficiently alleged damages, we need not address the dissent's analysis of whether the alleged facts satisfy the "superior knowledge" exception to the general rule that when one alleges fraud based on an omission, the complaint must also allege the existence of a fiduciary relationship requiring disclosure of the unknown facts, here the existence of the nondisclosure agreement with Chang (*see Cobalt Partners, L.P. v GSC Capital Corp.*, 97 AD3d 35, 42-43 [1st Dept 2012]; *Dembeck v 220 Cent. Park S., LLC*, 33 AD3d 491, 492 [1st Dept 2006]). In short, plaintiff's failure to adequately plead actual damages is fatal to his cause of action sounding in fraudulent inducement.

The court properly dismissed the unjust enrichment claim because the parties had a written contract (*Pappas v Tzolis*, 20 NY3d 228, 234 [2012]), and plaintiff has received compensation and bonuses for the period he was employed pursuant to the contract (*see Meghan Beard, Inc. v Fadina*, 82 AD3d 591 [1st Dept 2011]). Concur—Moskowitz, Richter and Feinman, JJ.

Acosta, J.P., and Saxe, J., dissent in part in a memorandum by Saxe, J., as follows: This case illustrates the consequences of getting ensnared in a web of deceit by embarking upon a business relationship with parties who possess important information that they do not share with regard to risks of the enterprise. This appeal raises the issues of whether plaintiff's status as an at-will employee precludes him, as a matter of law, from bringing a claim against defendants for fraudulent inducement, and exactly what must be alleged to support an inference of damages.

Defendant Chipotle Mexican Grill, Inc. franchises chain Mexican restaurants across the nation; codefendant Steven Ells is its founder and CEO. Plaintiff Kyle Connaughton, who was employed by Chipotle, appeals from an order granting defendants' motion pursuant to CPLR 3211 to dismiss his complaint for fraudulent inducement and unjust enrichment.

For purposes of this appeal, we must accept as true the facts as alleged in the complaint, accord the plaintiff the benefit of every possible favorable inference, and determine whether the alleged facts fit within any cognizable legal theory (*see Gabriel v Therapists Unlimited*, 218 AD2d 614, 615 [1st Dept 1995]). According to the complaint, plaintiff is a well-known chef who has worked for some of the most prestigious restaurants in the world. In 2010, plaintiff conceived of and began developing an idea for a fast food restaurant chain that would serve ramen noodle products. Chipotle expressed interest in the concept, and in November 2010 plaintiff met with Ells. During their initial meeting, plaintiff described his ramen restaurant concept to Ells, who expressed significant interest in the idea. In the following weeks, plaintiff prepared a confidential business plan under the registered domain name "Ramen Yokocho," conceived around the existing service platform of the Chipotle Mexican Grill restaurants: fast food restaurants that serve high-quality food. On November 20, 2010, plaintiff submitted his plan to Ells.

Between November 2010 and January 2011, plaintiff and Ells met and discussed the menu, the service platform, and plaintiff's ideas generally regarding a ramen restaurant, and on January 2, 2011, Ells formally extended an exclusive offer by which Chipotle would proceed with plaintiff's ramen concept. Plaintiff obtained counsel to represent him in the ensuing negotiations.

The proposal Ells conveyed was that plaintiff would be compensated for the concept through an employment contract in which he would be paid a base salary as well as equity in the form of Chipotle company stock, to be paid out annually pursuant to a set schedule over his years there, as long as plaintiff remained employed by Chipotle on the ramen project. Although initially plaintiff was not interested in that proposal, when Ells told him that the contemplated stock grants required that he be an employee, plaintiff agreed. Plaintiff signed the employment contract in February 2011.

A letter from Ells to plaintiff dated January 24, 2011 provides details of the employment agreement; it states that plaintiff's employment with Chipotle was at will and that both parties

retained the option of ending the employment at any time, with or without notice or cause. A "Restricted Stock Units Agreement" signed in February 2011 states that the granting of stock to plaintiff "shall not be construed as granting to [plaintiff] any right with respect to continuance of employment with the Company" and that "the right of the Company to terminate plaintiff's employment with it at any time (whether by dismissal, discharge, retirement or otherwise) is specifically reserved by the Company and acknowledged by plaintiff." Plaintiff was given the title of "Culinary Director," a new position. His name and likeness were used in marketing materials for both Chipotle and the ShopHouse brand, the name given to the anticipated ramen noodle restaurant.

Plaintiff continued developing the ramen concept for Chipotle throughout 2011. In December 2011, he and a development team toured Japan to visit ramen restaurants and ingredient suppliers to prepare for the project. In February 2012, plaintiff received his first annual review from Ells, which was "entirely positive." He received his full bonus, and additional stock grants. Ells told plaintiff that this was the year to open the ramen restaurants. In May 2012, plaintiff returned to Japan, along with the development team and Ells, to visit ramen restaurants and suppliers. Upon his return to the U.S., plaintiff began working more intensively on the ramen concept. In September 2012, a lease was executed for a potential flagship ramen noodle restaurant to be located on 12th Street at University Place in Manhattan.

Plaintiff alleges that in October 2012, he first learned that Chipotle had a prior business relationship with David Chang, the owner of a restaurant called Momofuku Noodle Bar, concerning a similar ramen concept. Specifically, plaintiff alleges, some time that month he had dinner at Momofuku Noodle Bar with Mark Crumpacker, Chief Marketing Officer of Chipotle, and Tim Wildin, Chipotle's New Concept Development Director, to taste food and meet Momofuku's outgoing head chef, whom plaintiff had proposed as a possible hire for Chipotle's ramen restaurants. During that dinner, Crumpacker confided in plaintiff that Chipotle would not hire any former Momofuku employees, and that Momofuku would sue Chipotle when it opened the ramen restaurant, but that Ells had decided to proceed with plaintiff's concept anyway.

Specifically, plaintiff learned from Crumpacker that in 2008, Ells had entered into a confidential business deal with David Chang, under which Chang agreed to develop a ramen restaurant concept like the one plaintiff was developing. In conjunc-

tion with that deal, Ells had signed a nondisclosure agreement which required him to maintain as confidential the details of Chang's ramen concept, including menus and other business development ideas. Further, Chang had worked on the design for a Dupont Circle property that later became a flagship ShopHouse restaurant, the name Chipotle gave to its ramen noodle restaurant. According to plaintiff, he was informed by Crumpacker that Chang never consented to the use of his design work for the opening of ShopHouse, and did not authorize the use of any of his confidential work with Chipotle for the purpose of opening a ramen restaurant, but that Chipotle nevertheless converted Chang's work for its own use.

After learning the foregoing information in October 2012, plaintiff confronted Ells concerning Chipotle's prior agreement with Chang. Ells did not deny the preexisting business dealings, but simply ordered plaintiff to proceed with the ramen concept. Plaintiff was concerned that by continuing to work with Chipotle to open the ramen restaurant, he would become a party to a lawsuit that would be brought by David Chang and Momofuku. On November 17, 2012, Ells terminated plaintiff's employment, and this action followed.

The crux of plaintiff's fraudulent inducement claim against defendants is that by failing to disclose to plaintiff Chipotle's prior business relationship with Chang before plaintiff and Ells entered into their business relationship, Ells omitted a material fact that would substantially impact plaintiff's ability to successfully implement his ramen concept. Plaintiff reasons that Ells and other Chipotle staff, while exchanging information and ideas with him during the collaborative process, had conveyed information to him that had been communicated to them by David Chang. Therefore, any implementation by plaintiff of his ramen concept while employed by Chipotle would make plaintiff an active participant in the violation of the nondisclosure agreement between Chipotle and Momofuku. Further, if plaintiff implemented his ramen concept at Chipotle despite its prior business dealings with Chang, his professional reputation would be ruined, and he could never escape the accusation that he had stolen Chang's ramen concepts.

It is plaintiff's position that if Chipotle's prior business dealings with Momofuku had been disclosed, plaintiff could have properly weighed the offered business opportunity and decided whether he could realistically pursue his ramen proposal to a successful conclusion with Chipotle. He asserts that he "would never have accepted employment with Chipotle" if defendants had disclosed the material fact of their prior dealings with Chang.

As to his unjust enrichment claim, plaintiff alleged that Chipotle had been unjustly enriched, as it had "received the benefit of plaintiff's ramen concept and has not compensated him for it."

Defendants' motion to dismiss the complaint pursuant to CPLR 3211 was granted, on the ground that plaintiff's status as an "at will" employee precluded the claims, and that plaintiff's claimed damages were speculative. The majority here agrees.

With respect to plaintiff's cause of action for unjust enrichment, I agree. The doctrine of unjust enrichment does not apply where a contract governs the subject matter (*Pappas v Tzolis*, 20 NY3d 228, 234 [2012]). Inasmuch as plaintiff had a contract with defendants providing for compensation for his work, which compensation he received for the period in which he worked for them, no cause of action for unjust enrichment lies (*see Meghan Beard, Inc. v Fadina*, 82 AD3d 591 [1st Dept 2011]; *Mackie v La Salle Indus.*, 92 AD2d 821 [1st Dept 1983]).

However, as to the claim for fraudulent inducement, I reject defendants' argument that it is deficient; the absence of either an affirmative misrepresentation or a fiduciary duty does not absolutely foreclose such a claim in this instance.

To state a claim for fraudulent inducement, a plaintiff must allege "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury" (*Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421 [1996]). If fraud is claimed based on an omission, as opposed to affirmative misrepresentation of material fact, the complaint must normally allege the existence of a fiduciary or confidential relationship (*see Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 179 [2011]; *Cobalt Partners, L.P. v GSC Capital Corp.*, 97 AD3d 35, 42-43 [1st Dept 2012]).

However, this Court has recognized the existence of an alternative basis for allowing fraud claims to proceed based on omissions, even in arm's length transactions in the absence of a fiduciary or confidential relationship, "where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair" (*see e.g. P.T. Bank Cent. Asia, N.Y. Branch v ABN AMRO Bank N.V.*, 301 AD2d 373, 378 [1st Dept 2003]), when the party with special knowledge knows that the other party would act differently if possessed of that knowledge (*see Swersky v Dreyer & Traub*, 219 AD2d 321 [1st Dept 1996]). For instance, in *Swersky*, the plaintiffs alleged

that they had purchased shares of stock of QMAX Technology Group, following negotiations between Swersky and defendant Howard Morse on behalf of QMAX, but that Morse had failed to inform Swersky during their negotiations that QMAX had granted Morse an option for 100,000 of the type of ESOP shares Swersky sought but Morse said were unavailable. This Court reinstated the plaintiffs' fraudulent concealment claim based on those allegations.

The allegations here are sufficient to support a claim that defendants possessed "superior knowledge" with regard to material information regarding Chipotle's prior business dealings with Chang, including the existence of a nondisclosure agreement, and withheld such information in order to induce plaintiff to accept the offered position with Chipotle.

Defendants rely on the argument that the superior knowledge doctrine is inapplicable where the undisclosed material information was discoverable by the plaintiff through the "exercise of ordinary intelligence" (*Jana L. v West 129th St. Realty Corp.*, 22 AD3d 274, 278 [1st Dept 2005] [internal quotation marks omitted]); they contend that plaintiff could have discovered the truth through the simple expedient of asking defendants whether they had a previous agreement with anyone else. This argument does not warrant dismissal at this juncture. While it may seem, in hindsight, as if it would be commonplace to pose such a question, there is an issue of fact as to whether, in this context, such a question would be expected of a person in plaintiff's position entering into such an agreement (*see Black v Chittenden*, 69 NY2d 665, 669 [1986]).

Plaintiff's at-will employment status does not preclude a claim for fraudulent inducement, since he is not claiming a violation of his employment contract, or seeking damages arising from his termination.

A litigant with a fraud claim may seek damages consisting of the "actual pecuniary loss sustained as [a] direct result of the wrong" (*Lama Holding*, 88 NY2d at 421). However, damages for fraud cannot be used to compensate a plaintiff for "profits which would have been realized in the absence of fraud" (*id.*). That is, "[d]amages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained" (*id.*). Therefore, plaintiff may not obtain damages based on the amount he could have realized had he followed through to completion the creation of the ramen restaurant plan with some other, unencumbered restaurant group, rather than ac-

cepting the Chipotle offer; that theory of damages amounts to an impermissible claim for profits that would have been realized in the absence of fraud.

However, damages need not be demonstrated at the pleading stage as long as the possibility of damages may reasonably be inferred (*see Caruso, Caruso & Branda, P.C. v Hirsch*, 41 AD3d 407, 410 [2d Dept 2007]). CPLR 3016 (b) only requires that "the circumstances constituting the wrong shall be stated in detail"; it does not require that a plaintiff's damages be stated in detail. In *Lama Holding*, it was clear from the pleadings that the plaintiff could not have suffered losses from the alleged fraud (88 NY2d at 422). Here, unlike in *Lama Holding*, we cannot pronounce with certainty at this stage of the litigation that plaintiff will suffer no compensable losses as a result of defendants' alleged fraud. A reasonable inference of general damages may be "implicit by the facts alleged" and does *not* need to be explicitly stated (*see Kronos, Inc. v AVX Corp.*, 81 NY2d 90, 97 [1993]; *see also Caruso*, 41 AD3d 407). Here, it is implicit from the allegations contained in the pleaded complaint, which must, according to law, be construed liberally, that the position in which plaintiff was placed due to defendant's conduct may cause him, or may have already caused him, compensable damages, particularly the possibility of damage to his reputation, and perhaps even future legal expenses. By conceding that the allegations of the complaint allow an inference of *future* injury, and yet definitively asserting that those same allegations do not allow an inference of present injury, the majority fails to construe the complaint liberally and accord plaintiff every possible favorable inference as we are required to do (*see 511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 152 [2002]).

In addition, "when a party to a contract perpetrates a fraud he commits a wrong for which he is liable to the defrauded party in at least nominal damages, even though no actual damages be shown" (*Pryor v Foster*, 130 NY 171, 178 [1891]; *Northrop v Hill*, 57 NY 351, 354 [1874]). Notwithstanding the conclusion in *Kronos, Inc. v AVX Corp.* (81 NY2d at 95) that nominal damages are not available for tort claims, if a fraud plaintiff establishes at trial that he was defrauded, he may be entitled to nominal damages even if he is unable to establish that he was financially injured by the fraud (*see Clearview Concrete Prods. Corp. v S. Charles Gherardi, Inc.*, 88 AD2d 461, 470 [2d Dept 1982]). Notably, the Court in *Kronos* carved out an exception allowing nominal damages for fraud claims "when needed to protect an 'important technical right'" (81

NY2d at 95, 97), and that exception was used to award nominal damages on a fraud claim in *Imaging Intl. v Hell Graphic Sys., Inc.* (17 Misc 3d 1123[A], 2007 NY Slip Op 52120[U] [Sup Ct, NY County 2007], *affd* 60 AD3d 450 [1st Dept 2009]). While this possibility does not eliminate the need to plead damages, it should encourage us to construe the allegations of the complaint as liberally as possible when considering whether plaintiff sufficiently pleaded damages.

Should plaintiff be unable to establish his damages claim at trial or on a summary judgment motion, that issue can be addressed at that juncture. But his allegations suffice to establish the possibility of damages for the present purposes. I would therefore modify in order to deny defendants' motion to dismiss the cause of action for fraudulent inducement.