[982 NE2d 74, 958 NYS2d 312]

KRISTIN KAHKONEN DUPREE, Respondent-Appellant, v JAMES E. GIUGLIANO, Appellant-Respondent.

Argued October 17, 2012; decided November 29, 2012

APPEARANCES OF COUNSEL

*Shayne, Dachs, Corker, Sauer & Dachs, LLP*, Mineola (*Norman H. Dachs* of counsel), for appellant-respondent.

*Kenneth S. Cooperstein*, Centerport, for respondent-appellant.

### OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be modified, without costs, by vacating the award for punitive damages and, as so modified, affirmed, and the certified question not answered upon the ground it is unnecessary.

In January 2000, plaintiff Kristin Kahkonen Dupree sought and obtained treatment for depression and stress from defendant James E. Giugliano, a licensed family physician with a concentration in osteopathic medicine. Defendant prescribed antidepressant drugs for plaintiff, and suggested that she get

more exercise or take warm baths to relieve stress. He also referred her to a therapist for counseling. In June 2001, plaintiff and defendant became involved in an adulterous relationship. Their first sexual encounter occurred at a gym where defendant was showing plaintiff exercises to alleviate stress and anxiety; these encounters continued several times a week for nine months before plaintiff and defendant mutually decided to end their affair. Plaintiff confessed the adultery to her husband, who subsequently sued for divorce. The divorce proceeding was contentious and protracted, lasting five years before a settlement was reached.

Plaintiff commenced suit for medical malpractice in February 2005. At trial, plaintiff offered testimony that she felt the affair was wrong, but was unable to control herself. Her expert testified that plaintiff's "romantic" feelings towards defendant were the result of "eroticized transference," a medical phenomenon in which the patient experiences "near psychotic attraction" to a treating physician, which the patient is powerless to resist. Plaintiff also introduced evidence of general and special damages. Her claimed general damages consisted of mental distress—i.e., 12 years of anguish proximately caused by defendant's malpractice. She asked for special damages of $435,600 for loss of her husband's financial support, and $155,000 for legal fees incurred in connection with the divorce.

The trial court charged comparative fault, and the jury found malpractice with plaintiff's conduct a substantial factor, setting her fault at 25%. The jury awarded plaintiff $150,000 for past mental distress, $50,000 for future mental distress, $134,000 for past loss of income, $0 for future lost income, $0 for expenses of divorce, and $166,000 in punitive damages. Defendant appealed the malpractice finding; plaintiff cross-appealed, arguing that comparative fault should not have been charged because of the "inherent compulsion doctrine," and that the legal fees were proved by her unrebutted testimony. The Appellate Division affirmed the judgment on the jury verdict, with one Justice dissenting (87 AD3d 975 [2d Dept 2011]). Both parties asked the Appellate Division for leave to appeal, which was granted in December 2011.

 Plaintiff sought out defendant for medical treatment for depression and anxiety. Defendant prescribed antidepressant medication for plaintiff, even switching medications in response to her concerns about diminished libido; he referred her to a therapist. Further, the jury heard considerable testimony about

the "transference" phenomenon, and defendant's professional duty to manage this once he began treating plaintiff's mental health problems. The standard for medical malpractice is that "the challenged conduct constitute[ ] medical treatment or *bear[ ] a substantial relationship*" to the physician's treatment of the patient (1B NY PJI3d 2:150 at 47-48 [2012] [emphasis added]; *see also Scott v Uljanov*, 74 NY2d 673, 675 [1989]). Here, where defendant was prescribing a course of treatment for plaintiff's mental health problems, including medication and counseling, a jury might reasonably conclude that the sexual relationship was substantially related to and, in fact, interfered with the treatment so as to constitute medical malpractice. That defendant mismanaged plaintiff's medical condition does not, however, negate comparative fault. The affair continued for nine months, during which time both plaintiff and defendant clearly sought out repeated sexual encounters. The jury might, as it obviously did, reasonably discount the expert's testimony that plaintiff was wholly without volition in the matter.

■ Finally, punitive damages were improperly charged as a matter of law. The standard for an award of punitive damages is that a defendant manifest evil or malicious conduct beyond any breach of professional duty. There must be

> " 'aggravation or outrage, such as spite or "malice," or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton' " (*see Prozeralik v Capital Cities Communications*, 82 NY2d 466, 479 [1993], quoting Prosser and Keeton, Torts § 2 at 9-10 [5th ed 1984]).

The circumstances here do not measure up to this standard: there is no evidence the doctor willfully caused plaintiff's "transference" or harm.

We consider the remaining issues raised on the appeal and cross appeal to be without merit.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur in memorandum.

Order modified, etc.