[999 NE2d 520, 977 NYS2d 157]

GEORGITSI REALTY, LLC, Appellant, v PENN-STAR INSURANCE COMPANY, Respondent.

Argued September 10, 2013; decided October 17, 2013

## POINTS OF COUNSEL

*The Dweck Law Firm LLP*, New York City (*Jack S. Dweck* and *Christopher Fraser* of counsel), for appellant. I. The vandalism provision encompasses damage to the covered property based upon the intentional conduct by the adjacent owner and its excavator, even though the damage inflicted by the perpetrators was not directly to the insured's property. (*Raymond Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa.*, 5 NY3d 157; *Bretton v Mutual of Omaha Ins. Co.*, 110 AD2d 46; *Long Is. Light. Co. v Hartford Acc. & Indem. Co.*, 76 Misc 2d 832; *Caporino v Travelers Ins. Co.*, 62 NY2d 234; *Layzer v Leavitt*, 770 F Supp 2d 579; *Cordiano v Metacon Gun Club, Inc.*, 575 F3d 199; *Louisville & Jefferson County Metro. Sewer Dist. v Travelers Ins. Co.*, 753 F2d 533; *Breed v Insurance Co. of N. Am.*, 46 NY2d 351; *Ruder & Finn v Seaboard Sur. Co.*, 52 NY2d 663; *Federal Ins. Co. v International Bus. Machs. Corp.*, 18 NY3d 642.) II. The finding of willfulness from intentional illegal conduct constitutes malice. (*Louisville & Jefferson County Metro. Sewer Dist. v Travelers Ins. Co.*, 753 F2d 533; *Romanych v Liverpool & London & Globe Ins. Co.*, 8 Misc 2d 269; *Cresthill Indus. v Providence Washington Ins. Co.*, 53 AD2d 488; *Lamb v Cheney & Son*, 227 NY 418; *Cragg v Allstate Indem. Corp.*, 17 NY3d 118; *Maurice Goldman & Sons v Hanover Ins. Co.*, 80 NY2d 986; *Pioneer Tower Owners Assn. v State Farm Fire & Cas. Co.*, 51 AD3d 649; *MBIA Inc. v Federal Ins. Co.*, 652 F3d 152; *Village of Sylvan Beach, N.Y. v Travelers Indem. Co.*, 55 F3d 114; *Casavecchia v Mizrahi*, 57 AD3d 702.)

*Miranda Sambursky Slone Sklarin Verveniotis LLP*, Mineola (*Steven Verveniotis* of counsel), for respondent. The first certified question should be answered in the negative, and the second certified question should be answered with a ruling that property damage caused by construction and excavation at the

adjacent property does not constitute vandalism covered by the policy. (*Government Empls. Ins. Co. v Kligler*, 42 NY2d 863; *Stoney Run Co. v Prudential-LMI Commercial Ins. Co.*, 47 F3d 34; *Ace Wire & Cable Co. v Aetna Cas. & Sur. Co.*, 60 NY2d 390; *Matter of Matco-Norca, Inc.*, 22 AD3d 495; *Harrigan v Liberty Mut. Fire Ins. Co.*, 170 AD2d 930; *Moshiko, Inc. v Seiger & Smith*, 137 AD2d 170, 72 NY2d 945; *Romanych v Liverpool & London & Globe Ins. Co.*, 8 Misc 2d 269; *Benson Holding Corp. v New York Prop. Ins. Underwriting Assn.*, 124 Misc 2d 955; *Roselli v Royal Ins. Co. of Am.*, 142 Misc 2d 857; *Fanberg Realty Corp. v Travelers Cos.*, 117 AD2d 582.)

**OPINION OF THE COURT**

Smith, J.

The United States Court of Appeals for the Second Circuit has asked us two questions relating to a property insurance policy covering acts of "vandalism." We answer that: (1) malicious damage within the coverage of such a policy may be found to result from acts not directed specifically at the covered property; and (2) to obtain coverage under such a policy, the insured must show malice, defined as such a conscious and deliberate disregard of the interests of others that the conduct in question may be called willful or wanton.

I

Plaintiff is the owner of a four-story apartment building in Park Slope, Brooklyn. It obtained from defendant a "named perils" policy of property insurance, covering "direct physical loss . . . or damage . . . caused by or resulting from" any of 14 kinds of events. The only peril relevant here is described in the policy as: "Vandalism, meaning willful and malicious damage to, or destruction of, the described property."

Armory Plaza, Inc., the owner of the lot next to plaintiff's building, decided to build a new building that would include an underground parking garage. It hired contractors to do the excavation. According to plaintiff, the excavation caused cracks in the walls and foundations of plaintiff's building; the cracks became more pronounced, the building began to settle, and plaintiff feared the building would collapse. Plaintiff complained to the New York City Department of Buildings, which issued a series of violations and "stop work" orders. Plaintiff alleges that the violations resulted in guilty pleas or defaults and fines totaling more than $36,000, but that the stop work orders were

ignored and the contractors kept working. Plaintiff obtained a temporary restraining order from Supreme Court, directing Armory and its contractors "to cease all construction and/or excavation work." This order too, plaintiff says, was ignored.

Plaintiff made a claim under its policy which defendant rejected, and plaintiff brought suit in Supreme Court. The case was removed to the United States District Court for the Eastern District of New York, which granted summary judgment for defendant, holding that the alleged conduct of Armory and its contractors was not "vandalism" within the meaning of the policy (*Georgitsi Realty, LLC v Penn-Star Ins. Co.*, 2011 WL 4804873, 2011 US Dist LEXIS 116854 [ED NY, Aug. 30, 2011, No. 08-CV-4462 (DLI)(RML)] [Report and Recommendation of Magistrate Judge]; *Georgitsi Realty, LLC v Penn-Star Ins. Co.*, 2011 WL 4889251, 2011 US Dist LEXIS 114800 [ED NY, Sept. 30, 2011, No. 08-CV-4462 (DLI)(RML)] [adopting Report and Recommendation]). Plaintiff appealed to the Second Circuit Court of Appeals, which certified to us the following two questions:

> "For purposes of construing a property insurance policy covering acts of vandalism, may malicious damage be found to result from an act not directed specifically at the covered property?"

> "If so, what state of mind is required?" (*Georgitsi Realty, LLC v Penn-Star Ins. Co.*, 702 F3d 152, 159 [2d Cir 2012]).

We answer the first question yes, and answer the second by saying that the state of mind is the same that would be required to award punitive damages against the alleged vandal: such a conscious and deliberate disregard of the interests of others that the conduct in question may be called willful or wanton.

## II

On the question of whether an act may be called "vandalism" when it was not directed specifically at the damaged property, the authorities, though sparse, support an affirmative answer, and our own analysis of the question leads us to the same conclusion.

Our Court has not, apparently, ever addressed the meaning of "vandalism" in an insurance policy. The most relevant New York case is an Appellate Division decision, *Cresthill Indus. v Providence Washington Ins. Co.* (53 AD2d 488 [2d Dept 1976]).

The plaintiff in that case had leased part of the ground floor of a warehouse and stored its property there. "[P]ersons described . . . as 'perpetrators' apparently broke into the unoccupied third floor of the warehouse, uncoupled the pipes carrying water to the bathroom fixture, carried away the fixtures and left the water running from the severed connections" (*id.* at 490). The water flowed down to the first floor and damaged plaintiff's property. The damage was held to be covered by an insurance policy applicable to "[v]andalism and malicious mischief, meaning only willful and malicious damage to or destruction of the property covered hereunder" (*id.*), even though the "perpetrators" did not direct their acts at the plaintiff's property, and presumably never knew that the plaintiff or its property existed.

A case closer to this one on its facts is the decision of the United States Court of Appeals for the Sixth Circuit in *Louisville & Jefferson County Metro. Sewer Dist. v Travelers Ins. Co.* (753 F2d 533 [6th Cir 1985]). There, the alleged vandal was one Distler, the owner of a recycling firm that had a contract to store toxic waste. Distler decided to save money by "storing" the waste in a public sewer. The sewer itself was not property covered under the plaintiff's insurance policy, but the waste flowed to a sewage treatment plant that was covered. The plaintiff was allowed to recover the damage to the plant under a policy insuring against "vandalism and malicious mischief, meaning only direct loss by willful and malicious damage to or destruction of property" (*id.* at 534). Distler obviously was not directing his activities at the sewage treatment plant, but that did not prevent recovery. (*See also Cole v Country Mut. Ins. Co.*, 5 Ill App 3d 335, 282 NE2d 216 [1972].)

*Cresthill* and *Louisville*, insofar as they relate to the Second Circuit's first question, seem to us indistinguishable from the present case. Defendant relies on *Fanberg Realty Corp. v Travelers Cos.* (117 AD2d 582 [2d Dept 1986]), but the brief opinion in that case gives it little help. *Fanberg* did involve vandalism coverage, and damage caused by contractors working on an adjacent building, but it contains no explanation of why the damage was not covered. It may be that the court found the activity of the alleged vandals not to be "malicious."

We agree with the holdings of the *Cresthill* and *Louisville* courts. We see no reason why the term "vandalism" should be limited to acts "directed specifically at the covered property." Vandalism, as the term is ordinarily understood, need not imply a specific intent to accomplish any particular result; vandals

may act simply out of a love of excitement, or an unfocused desire to do harm, or (as in *Cresthill*, *Louisville*, and in the present case) out of a desire to enrich oneself without caring about the consequences to others. Nor does it seem relevant that the alleged act of vandalism here—as in *Cresthill* and *Louisville*—did not bring the alleged vandals in direct contact with the covered property. Where damage naturally and foreseeably results from an act of vandalism, a vandalism clause in an insurance policy should cover it.

It is true that, in some cases of alleged vandalism not directed at particular property, the term does not intuitively seem to fit. Thus, while the acts of the "perpetrators" in *Cresthill* seem like prototypical acts of vandalism, those in *Louisville* and the present case do not. The word vandalism, which derives from the sack of Rome by the original Vandals in 455 AD (*see* IV Edward Gibbon, The History of the Decline and Fall of the Roman Empire at 246-248 [Folio Society 1986]), more readily brings to mind people who smash and loot than business owners who seek their own profit in disregard of the injury they do to the property of others. We conclude, however, that there is no principled distinction between the two. An excavator who is paid to dig a hole, and does so in conscious disregard of likely damage to the building next door, is, for these purposes, not essentially different from an irresponsible youth who might dig a hole on the same property, with the same effect, whether in search of buried treasure or just for fun.

We answer yes to the Second Circuit's first question.

### III

■ In common speech, and by the express terms of the policy in suit, vandalism is "malicious" damage to property. The Second Circuit's second question asks, in essence, what state of mind amounts to "malice" for these purposes. We answer by adopting, insofar as it relates to property damage, the formulation we have used in reviewing awards of punitive damages. Conduct is "malicious" for these purposes when it reflects "such a conscious and deliberate disregard of the interests of others that [it] may be called wilful or wanton" (*Marinaccio v Town of Clarence*, 20 NY3d 506, 511 [2013], quoting *Dupree v Giugliano*, 20 NY3d 921, 924 [2012]; *see also Prozeralik v Capital Cities Communications*, 82 NY2d 466, 479 [1993]; *Carvel Corp. v Noonan*, 350 F3d 6, 24 [2d Cir 2003]; Prosser & Keeton, Torts § 2 at 9 [5th ed 1984]). This familiar test, we believe, will serve

to distinguish between acts that may fairly be called vandalism and ordinary tortious conduct. Insurance against vandalism should not be converted into something approaching general coverage for property damage. Insureds who want broader coverage should obtain it and pay an appropriate premium.

Accordingly, the certified questions should be answered as stated in this opinion.

ABDUS-SALAAM, J. (dissenting in part). "[V]andalism is defined as the destruction of property generally, and the same must be willful and malicious" (11 Steven Plitt et al., Couch on Insurance 3d § 155:92). With this definition in mind, I agree with the majority that an act may constitute "vandalism" within the meaning of an insurance policy even though the act was not directed specifically at the covered property; thus, the first certified question should be answered in the affirmative.

Malice is an essential ingredient of vandalism, as the majority recognizes, but its definition of the necessary "malicious" state of mind omits a critical component: intent to damage property. Willful and malicious damage to property is the very essence of vandalism, and a vandal's malicious state of mind cannot be separated from his or her intent to damage or destroy property. Put differently, a perpetrator who acts maliciously but without the intent to damage property does not commit an act of vandalism, as that term is traditionally understood (see id.; Merriam-Webster's Collegiate Dictionary 1383 [11th ed 2008]; see also Black's Law Dictionary [9th ed 2009], vandalism). In those circumstances, the perpetrator engages in some other malicious act, perhaps one where malice may be proved by showing that the perpetrator evinced "such a conscious and deliberate disregard of the interests of others that [his or her conduct] may be called wilful or wanton" (majority op at 611 [internal quotations marks omitted]). In the context of insurance coverage for vandalism, however, such a showing should not suffice without evidence that the vandal intended to damage or destroy property, be it the covered property or otherwise.

Accordingly, I would hold that, to recover under a policy insuring against a loss caused by vandalism, the insured must prove that the damage was caused by a malicious act intended to damage property, even if not the insured's specific property. Such an evidentiary requirement would better confine vandalism coverage to the bounds contracted for by the parties to an insurance contract, and prevent coverage from extending to willful and malicious acts not properly categorized as vandalism because property damage was not the actor's primary intent.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, PIGOTT and RIVERA concur; Judge ABDUS-SALAAM dissents in part in an opinion.

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.27 of this Court's Rules of Practice, and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified questions answered in accordance with the opinion herein.