**Paley v Curious Holdings, LLC**

2026 NY Slip Op 30937(U)

March 11, 2026

Supreme Court, New York County

Docket Number: Index No. 162520/2015

Judge: Andrew Borrok

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     **HON. ANDREW BORROK**          PART 53

*Justice*

-------------------------------------------------------------------------------X

JONATHAN PALEY, INDIVIDUALLY AND DERIVATIVELY
ON BEHALF OF CURIOUS HOLDINGS, LLC,

                          Plaintiff,

                          - v -

CURIOUS HOLDINGS, LLC,MILK BARN, INC.,JAN
KORBELIN, MICROSERIES, INC.,MARINA GRASIC,

                          Defendant.

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 162520/2015 |
| MOTION DATE | |
| MOTION SEQ. NO. | 011 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 011) 307, 308, 309, 310, 311, 312, 313, 314, 315, 330, 331, 332, 333, 334

were read on this motion to/for               AMEND CAPTION/PLEADINGS               .

Upon the foregoing documents and for the reasons set forth on the record (*tr.* 3.6.26), the

Plaintiff's order to show cause (the **OSC**) pursuant to CPLR § 3025(c) seeking leave to file an

amended pleading to conform the pleadings to the evidence adduced at trial is GRANTED as set

forth below.

Simply put, inasmuch as the basis for the OSC is primarily the evidence adduced by the

Defendants, and inconsistent testimony given by certain of the Defendants at trial from that

which they gave at their deposition, there simply is no surprise or prejudice (*Rodriguez v Panjo*,

81 AD3d 805, 806 [2d Dept 2011]; *Loomis v. Civetta Corinno Constr. Corp.,* 54 NY2d 18, 23

[1981]; *National Loan Investors, L.P. v New Zion Church of Apostolic Faith, Inc.,* 213 AD3d

860, 862 [2d Dept 2023]).

## THE RELEVANT FACTS AND CIRCUMSTANCES

[* 1]

Reference is made to a Decision and Order (the **Appellate Division Decision**, *Paley v Curious Holdings, LLC,* 233 AD3d 590 [1st Dept 2024]), dated December 24, 2024, pursuant to which the Appellate Division modified a certain Decision and Order of this Court, dated June 6, 2023, and a Judgment, dated December 15, 2023, (collectively, the **Trial Court Decision and Judgment**; NYSCEF Doc. Nos. 239 and 280) as follows:

> Judgment, Supreme Court, New York County (Andrew Borrok, J.), entered December 15, 2023, awarding a money judgment in plaintiff's favor and against defendants, jointly and severally, and bringing up for review an order, same court and Justice, entered June 7, 2023, which granted plaintiff's motion for summary judgment against defendants and denied defendants' motion for summary judgment, unanimously modified, on the law, to remand for a determination of damages under former Debtor and Creditor Law §§ 276, 273, 273-a and 274 as to defendants Microseries, Inc. and Milk Barn Inc. and to hold that defendant Marina Grasic is liable as the alter ego of Milk Barn for any violations of the Debtor and Creditor Law, vacate the judgment against defendant Jan Korbelin that was based on the Debtor and Creditor Law claims, vacate the judgment against Korbelin that was based on the claims for fraud and usurpation of corporate opportunity and remand for further proceedings on those claims, grant defendants' motion for summary judgment dismissing the conversion claim as against all defendants and the usurpation of corporate opportunity and fraud claims as against Grasic, Microseries, and Milk Barn, and otherwise affirmed, without costs. Appeal from aforementioned order, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

> Defendant Korbelin, as CEO of nominal defendant Curious Holdings, LLC, caused ***all of its assets,*** including allegedly valuable contracts, to be transferred to two companies owned by his wife. These transfers were made in haste, with limited disclosure and, arguably, for inadequate consideration. The purpose of the transfer was to avoid paying plaintiff, who was then in litigation with Curious and Korbelin over the failure to issue and buy out an 11% equity stake in Curious. These facts show sufficient badges of fraud such that plaintiff established the necessary intent to hinder and delay (*see Matter of Steinberg v Levine*, 6 AD3d 620, 621 [2d Dept 2004]).

> However, because the value of the conveyed contracts is disputed, further proceedings are required to determine the amount of damages to which plaintiff is entitled (*see Schwartz v Boom Batta, Inc.*, 137 AD3d 512, 513 [1st Dept 2016]). Contrary to defendants' assertion, the contracts at issue are property subject to the Debtor and Creditor Law (*see generally In re R.M.L., Inc.*, 92 F3d 139, 151 [3d Cir 1996]). Because the transaction was made in bad faith, Microseries and Milk

[* 2]

Barn are also liable under former Debtor and Creditor Law §§ 273, 273-a and 274 (*see* former Debtor and Creditor Law § 272 [a]).

The fraudulent conveyance claims against Korbelin and Grasic were dismissed on a prior motion. Therefore, they can only be liable to the extent they are alter egos of one of the corporate recipients of the assets. Korbelin is not an owner of any of the entities. There was no factual basis to show that he was in control, let alone dominated, the entities. Therefore, the Debtor and Creditor claims against Korbelin must be dismissed.

Grasic formed Milk Barn with no capital, no employees, and no business. Its only substantive purpose was to receive the fraudulently conveyed assets of Curious, including its contracts, employees, and management. As such, she is liable for the acts of Milk Barn, including under the Debtor and Creditor Law (*see Etage Real Estate LLC v Stern*, 211 AD3d 632, 633 [1st Dept 2022]).

While Grasic is the owner of Microseries, that company existed for years before the transfer, and did substantial independent business with its own employees and clients. Thus, there is no showing of the badges of fraud sufficient to find Grasic an alter ego of Microseries.

The fraud claim was asserted only as to defendant Korbelin, and thus it should have been dismissed as to the other defendants. ***Korbelin, as a fiduciary***, had a duty to disclose material facts to the members of Curious, including plaintiff (*see Cygnus Opportunity Fund, LLC v Washington Prime Group, LLC*, 302 A3d 430, 450 [Del Ch 2023]). He failed to disclose material facts about the transfer and the status of Curious.

However, plaintiff failed to demonstrate conclusively what steps he could have taken to prevent any loss, had he known the full facts, and did not show the amount of loss he could have avoided. Accordingly, this claim as asserted against Korbelin is remanded (*see Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553, 559 [2009]).

***The conversion claim should have been dismissed. Plaintiff asserted the claim individually.*** However, as a mere member of the LLC, he has no ownership right in its property (*see Bank of Am. Corp. v Lemgruber*, 385 F Supp 2d 200, 223 [SD NY 2005]). Nor are the contingent contracts at issue the type of property subject to conversion (*see In re Tashlitsky*, 492 BR 640, 649-650 [ED NY 2013], citing *Thyroff v Nationwide Mut. Ins. Co.*, 8 NY3d 283 [2007]).

***Because only fiduciaries are subject to claims for usurpation of corporate opportunity, the claims should have been dismissed as to all defendants except Korbelin, the only defendant who was employed by Curious at the time of the transfer*** (*see Alexander & Alexander of N.Y. v Fritzen*, 147 AD2d 241, 246 [1st Dept 1989]). However, factual issues exist as to whether Curious could have

> performed and therefore profited under the transferred contracts, and, if so, the value of the opportunity.

> The court did not err in granting plaintiff's motion despite the failure to comply with Uniform Rules for Trial Courts (22 NYCRR) § 202.8-g. The court's individual rules made compliance optional.

(*Paley,* 233 AD3d [emphasis added]).

Following remand, this case was tried without a jury over the course of approximately 14 days, beginning on January 5, 2026 and ending on January 27, 2026. At trial, the Defendants (**not the Plaintiff**) introduced Curious' general ledger (the **Ledger**; Virtual Evidence Courtroom [**VEC**] 1-46) as a business record of Curious and testified in a manner which was inconsistent from the testimony that they had previously given at their deposition as to facts which form the basis for the Plaintiff's OSC (*see* VEC 1-173 at 66:6-68-8).

In a proposed second amended complaint (the **SAC**; NYSCEF Doc. No. 310), the Plaintiff seeks to add the following four causes of action: (i) breach of fiduciary duty against Korbelin and Grasic (Ninth Cause of Action), (ii) aiding and abetting breach of fiduciary duty against Grasic (Tenth Cause of Action), (iii) conversion against Grasic (Sixth Cause of Action), and (iv) tortious interference with prospective economic advantage against Korbelin, Grasic, Microseries, Inc. (**Microseries**), and Milk Barn, Inc. (**Milk Barn**) (Eleventh Cause of Action).

The Plaintiff additionally seeks to clarify the amount of damages sought pursuant to the DCL causes of action (First, Second, Third, Fourth, and Fifth Causes of Action)[1] and the causes of

---

[1] The Appellate Division Decision did not limit damages solely to the Disney Goldie and Bear Project (hereinafter defined): "Defendant Korbelin, as CEO of nominal defendant Curious Holdings, LLC, caused *all of its assets*, *including* allegedly valuable contracts, to be transferred to two companies owned by his wife" (*see Paley*, 233

[* 4]

action sounding in fraud (Seventh Cause of Action) and usurpation of corporate opportunity (Eighth Cause of Action). Moreover, the Plaintiff seeks to assert the usurpation of corporate opportunity (Eighth Cause of Action) claim as against Grasic and veil piercing claims against Microseries (Second, Third, Fourth, and Fifth Causes of Action) as a shell company of Grasic.

In the SAC, the Plaintiff alleges that, among other things, that the Ledger revealed that Curious held approximately $1.7 million of equity as of December 31, 2013 (VEC 1-46 at 37) in Cargo Entertainment, LLC (**Cargo**) (the **Cargo Investment**) – an entity that was owned by the Korbelin's wife, Grasic. The Plaintiff alleges that the equity in Cargo was the result of the alleged accrued monies Grasic's company owed to Curious for rent and services provided by Curious to Cargo. Previously at his deposition, Korbelin had amnesia as to what the approximately $1.7 million of Curious' equity in Cargo is that is reflected in the Ledger:

> Q What I put in front of you as Exhibit F is an August 1, 2013, letter from Cargo Entertainment to yourself in your capacity as CEO.
>
> A Uh-huh.
>
> Q And it seems to be a default letter on a promissory note dated January 1, 2013. Do you know -- recognize that signature there?
>
> A I'm not sure.
>
> Q Is that your signature?
>
> A No.
>
> Q Do you know whose signature that would be?
>
> A I am not sure.

---

AD3d at 590 [emphasis added]). For completeness, the Court notes that the Plaintiff seeks to clarify the damages sought as to the other claims, including, requesting punitive damages based on their argument that the trial recommend firmly establishes "willful, wanton and malicious, evinced a high degree of moral culpability, and demonstrated a conscious and deliberate disregard for Paley's rights" of both Korbelin and Grasic.

Q Is that Marina Grasic's signature?

A It could be. I'm not sure.

Q Do you recognize your wife's signature? Generally speaking, I'm asking.

A I would, but this -- I'm not quite sure here.

Q Okay. Do you know what this promissory note is referring to -- not this promissory note, this letter is referring to?

A I'm not sure. I don't remember this.

Q Do you remember ever borrowing money from Curious -- from Cargo on behalf of Curious?

A Borrowing from Curious?

Q No. Sorry. Withdrawn. Do you ever remember, as CEO of Curious, authorizing a loan from Cargo Entertainment?

A No, I don't.

Q Does any aspect of this loan refresh your -- ring a bell for you?

MR. FERCH: Of this letter, you mean?

MR. MOBARGHA: Of this letter or of this loan. The loan which is being referred to in the letter.

THE WITNESS: I am not sure. I'm trying to think, but I'm not sure.

BY MR. MOBARGHA:
Q If you don't recall, it's fine. I just was asking if you recalled.

A I'm trying to reread this.

Q Let me direct your attention, also, while you're rereading this letter, to the phrase at the end of paragraph 1 that "Cargo Entertainment shall, in its sole discretion, retain all rights, title, and interest in and into the units transferred pursuant to the promissory notes."

A Uh-huh.

Q What are those units transferring?

A *I'm not sure.*

Q *Did Curious transfer shares to Cargo Entertainment?*

A *No. No. Not to my knowledge.*

Q *So what are the units, then?*

A *I really -- I'm not quite sure.*

(NYSCEF Doc. No. 1-173 at 66:6-68:8 [emphasis added]).

At trial, however, when the Defendants introduced the Ledger as evidence of Curious'

insolvency which, according to the Defendants included an obligation of Curious to Cargo,

Korbelin had an epiphany:

> THE COURT: ... The promissory note you're telling me is a valid obligation of Curious, so extending the money, you know, they're getting a promissory note, I want to know what Curious got for giving them office space is really what I'm asking you. What did Curious get?
>
> THE WITNESS: So Curious -- so the goal was that Curious would get a potential ownership in Cargo so that –
>
> THE COURT: Curious would get ownership in Cargo?
>
> THE WITNESS: Yeah, potentially, so that we could basically expand the company and raise more capital.
>
> THE COURT: Okay, so now you're telling me that -- and by what arrangement document was Curious to get ownership in Cargo? I don't understand that, because wouldn't it have -- are you saying that every month that Cargo credited with a certain percentage interest in it to Curious so that Curious owned some interest in Cargo? Is that what you're saying to me?
>
> THE WITNESS: That was the goal, yes.
>
> THE COURT: Not the goal, I want to know what the present consideration was for the rent. So are you saying to me now that Curious owns part of Cargo?
>
> THE WITNESS: No, it had an ownership of I think 10 or 15 percent of Cargo.

THE COURT: Curious owns 10 or 15 percent of Cargo.

THE WITNESS: It had an ownership at that time, yeah.

THE COURT: Okay, I just want to make sure I understand what you're telling me. So Curious owns 10 percent of Cargo?

THE WITNESS: That's what was accumulating by basically having a rental place there.

(*tr.* 1.16.26 at 1173:22-1175:2)

The Plaintiff additionally alleges that when Grasic and Korbelin learned that Disney was moving forward with Curious to produce a series titled Goldie and Little Bear (the **Disney Goldie and Bear Project**), such that Curious' production of the series was not speculative, they deviously concocted a scheme to transfer not only the Disney Goldie and Bear Project and Curious' equipment out of Curious and to Grasic's company, but also a certain other series titled Amanda's Alligator (the **Amanda's Alligator Project**) and the equity in Cargo without paying Curious back the monies owed to Curious:

Date: 11/22/2013 2:23:09 PM
Subject: Series

Hi Dete, Hope you're well. It's been a long time since we've spoken, but your name came up yesterday- and I realized that we should discuss an opportunity on a children's series we have that is just about to be greenlit. Please call me when you have a moment (3109130229).

Best, Marina

(*see* VEC 1-153).[2]

---

[2] Given the Defendants' testimony about the Curious projects (or lack thereof) and the contemporaneous documents adduced at trial, the Plaintiff alleges that this establishes that as of November 2013, the Defendants knew and understood (and told third parties) that the Disney Goldie and Bear Project was no longer speculative.

**162520/2015   vs.**
**Motion No. 011**

**Page 8 of 23**

Ultimately, the SAC alleges that this scheme was accomplished by having Grasic's husband, Korbelin (the CEO of Curious), execute a promissory note (the **Cargo Note**; VEC 1-29 ), dated January 1, 2013, on behalf of Curious to Cargo for a $200,000 loan at a time when Cargo owed Curious over $1 million (*i.e.*, rather than just pay Curious the money that it owed Curious).[3]

Pursuant to the terms of the Cargo Note, (i) one-third of Curious' membership units in Cargo were transferred to Cargo as interest; (ii) the remaining two-thirds of Curious' interest in Cargo was transferred as security; and (iii) Curious forfeited all of its voting rights in Cargo (*see id.*). The Cargo Note also provided that if Curious did not pay the loan back, Cargo may exercise its discretion to reclaim Curious' balance of its equity in Cargo (which the Plaintiff alleges was in excess of a million dollars pursuant to the Ledger) on the $200,000 loaned to Curious:

> FOR VALUE RECEIVED, CURIOUS HOLDINGS LLC ("Maker") hereby promises to pay to the order of Cargo Entertainment, LLC ("Lender"), its successors and assigns, in lawful money of the United States of America, Two Hundred Thousand Dollars (S200,000). Unless the unpaid principal and accrued interest under this Promissory Note becomes due and payable on an accelerated basis pursuant to an Event of Default (defined below), or is earlier paid in full pursuant to the terms hereof, will first become due and payable on July 1, 2013 as per the terms of a note (the "Debenture") agreed to and executed by Maker and Lender dated January 1, 2013. Maker is the owner of certain Membership Units of Lender, all of said Units shall be transferred to Lender as: of January 1, 2013. One Third of the Membership Units shall be transferred to Lender in lieu of interest on the Note: Two-thirds of the Membership Units shall be transferred and held as security against repayment for this Note. Curious shall not retain any voting rights after the date of transfer. Upon an Event of Default (defined below). Lender may, in its sole discretion, retain all right, title and interest in and to all Membership

---

[3] In other words, the Plaintiff alleges that this was the first step in the sham transaction. According to the Plaintiff, if helping Curious or funding Curious' cash flow was truly the point, Korbelin as a fiduciary should have required Cargo to repay the approximately $1.2 million owed to Curious at that time (VEC 1-46 at 37) and such that it did not grow to approximately $1.7 million as of December 31, 2013. Additionally, according to the Plaintiff, the failure to do so was a breach of fiduciary duty by Korbelin. Worse, the SAC alleges that the cash flow issues were created in large part based on paying or accruing salary and bonus for Grasic (after she "resigned") and otherwise reimbursing her non-business expenses. Lastly, the Court notes that, according to the Plaintiff, because Grasic and Curious were co-owners of Cargo, Grasic owed fiduciary duties to Curious and the misappropriation of Curious' investment in Cargo by Grasic revealed at trial constitutes a duty to Curious by virtue of her equity in Cargo and breach of fiduciary duty by Grasic not previously addressed by the Appellate Division.

Units, including any voting rights, in addition to any other rights to collect under the terms of this Note.

(VEC 1-29 at 1).

The Plaintiff alleges that on August 1, 2013, Grasic sent a letter to her husband indicating that Korbelin as CEO had not caused Curious to "pay back" the $200,000 and, as such (and notwithstanding its substantial obligation to Curious), that Curious had forfeited all of its approximately $1.45 million equity in Cargo, as of August 1, 2013, for the five month, $200,000 extension of funds that it received[4] and that Cargo may pursue repayment of the $200,000 such that it remained a "liability" of Curious:

> August 1, 2013
>
> ….
>
> Dear Jan,
>
> Please be advised your company is in default of that certain Promissory Note between our respective companies dated as of January 1, 2013. As a result of your default, you are hereby advised Cargo Entertainment shall in its sole discretion retain all right, title and interest in and to the Units transferred pursuant to said Promissory Note.
>
> Pursuant to the terms of the Promissory Note, we retain all rights to additionally pursue Curious for repayment of the outstanding balance due on the Promissory Note. Notwithstanding the foregoing, we agree to provide you with an extension on repayment of the outstanding balance until December 31, 2013.

(the **August Taking Letter**; VEC 1-29 at 5). According to Plaintiff, this was the final step in the plan to strip Curious of what would become its approximately $1.7 million of accrued equity in

---

[4] *Compare* VEC 1-29 at 1 with VEC 1-46 at 78 (illustrating that according to the Ledger, the January Note was funded on February 27, 2013, though the as of date was January 1, 2013).

**162520/2015  vs.**
**Motion No.  011**

**Page 10 of 23**

Cargo as of December 31, 2013.[5] The Plaintiff alleges that none of this was disclosed or approved by the Plaintiff or the other disinterested owner of Curious.

Additionally, the Plaintiff alleges that the Ledger revealed that Korbelin caused Curious to pay or accrue Grasic a salary and a bonus after she no longer was employed by Curious, and to otherwise reimburse her for her personal expenses, including her credit card bills, flights, cell phone bills, parking, meals, and items purchased at Toys R Us/Babies R Us for their then young children, throughout 2013. Moreover, the Plaintiff alleges that the Ledger revealed Korbelin's improper withdrawal of $75,000 worth of petty cash where there was no credible evidence that such petty cash was used for legitimate business purposes (unlike other expenses which were itemized).[6] According to the Plaintiff, whereas other expenses and uses of money were itemized, this was not, revealing that he just took the petty cash too. Lastly, the Plaintiff alleges that the evidence adduced at trial established additional valuable contracts, including those involving the Amanda's Alligator Project,[7] and assets, including Maya Licenses, that were fraudulently transferred out of Curious for inadequate consideration.

---

[5] The Plaintiff alleges that Korbelin, as CEO, controlled what bills were paid and which were not and that this default was manufactured to accomplish this fraud. Among other things, the Plaintiff alleges that Korbelin continued to reimburse (or accrue the reimbursement of) his wife's personal expenses at time which she indicates she was not even employed by Curious. This too is sufficient to allege a breach of fiduciary duty by Korbelin and aiding and abetting as against Grasic based on her substantial assistance in accomplishing the breach.

[6] The Plaintiff alleges that Korbelin did not purport to credibly discuss how the petty cash would be accounted for. As a fiduciary, he would be obligated to keep appropriate records so that he could provide the same to Curious' auditors and could answer Curious' investors' questions particularly given Korbelin's position regarding Curious' allegedly perilous financial position.

[7] According to the Plaintiff, the evidence at trial established that the Amanda's Alligator Project did not go forward because of the Defendants' wrongful conduct and not because of lack of funding as the Defendants assert. In fact, the Plaintiff alleges that Mo Williams took the position that he did not have a deal with Grasic's companies and that the transfer terminated the deal:

> …
> Date: 3/4/2014 9:24:34 AM
> ...
> Hello Bruce,

162520/2015 vs.
Motion No. 011
Page 11 of 23

11 of 23

[* 11]

## DICUSSION

It is well settled that pursuant to CPLR § 3025(c) leave to amend pleadings to conform to the evidence at trial shall be freely given absent surprise or prejudice resulting from the delay (*see National Loan Investors, L.P,* 213 AD3d at 862). New York courts have held that to constitute prejudice, "there must be some indication that the [party] has been hindered in the preparation of [the party's] case or has been prevented from taking some measure in support of [its] position" (*Loomis,* 54 NY2d at 23). Furthermore, "[m]ere lateness is not a barrier to amendment" (*Rodriguez*, 81 AD3d at 806). Ultimately, "'[w]hen a variance develops between a pleading and proof admitted at the instance or with the acquiescence of a party, such party cannot later claim that he [or she] was surprised or prejudiced and the motion to conform should be granted'" (*Gonfiantini v Zino*, 184 AD2d 368 [1st Dept 19992] [citations omitted]).

Pursuant to CPLR § 3025(d), a trial court has the discretion to dispense with the answer requirement to amended pleadings (*see Bahar v Sanieoff*, 210 AD3d 459, 460 (1st Dept 2022). A factor that weighs heavily towards dispensing with the answer requirement is when the opposing party had notice of the added claims (*id.*). A court's discretion to dispense with the answer requirement "may be exercised without a formal request from the parties" (*id.*).

---

I was sent your recent emails. As you know, we were advised that Curious Holdings LLC no longer exist. As such, the contract between Mo and Curious is no longer valid. Under the circumstances, as Mo's agent, I have advised him not to do any further work on Amanda. It's an unfortunate situation, but there's nothing further we can do about it.

(VEC 1-150). According to the Plaintiff, nothing was introduced from PBS and no witness was called from PBS establishing otherwise.

As discussed above, in support of their OSC, the Plaintiff relies on the factual record that was developed at trial, including the exhibits that the Defendants proffered and the testimony that they gave.

Notably, in their opposition papers, the Defendants contest what the evidence means but not that it does exist. In addition, and as discussed (*tr.* 3.6.26), in their opposition papers, and relying on, among other cases, *Maracina v Schirrmeister*, 152 AD2d 502 [1st Dept 1989); *Matter of Sipal Realty Corp. v William*, 15 AD2d 456 [1st Dept 1961]; *Wiener v Wiener*, 10 AD3d 362 [2d Dept 2004]; *Berry v Williams*, 106 AD3d 935 [2d Dept 2013]; *Glassman v ProHealth Ambulatory Surgery Ctr., Inc.*, 96 AD3d 799 [2d Dept 2012]; *Micro-Link, LLC v Town of Amherst*, 155 AD3d 1638 [4th Dept 2017]; *Eikenberry v Adirondak*, 148 AD2d 664 [2d Dept 1989], the Defendants argue that the trial court may not conform the pleadings to the proof in a manner which is inconsistent with the findings of the Appellate Division and issues remanded by the Appellate Division to the trial court. As to this, they are of course correct. However, based on this, they argue that none of the damages that the Plaintiff seeks to clarify nor any of the claims that the Plaintiff seeks to assert based on the trial record are permissible. As to this broad application, and as discussed below, they are wrong.[8]

*A. Breach of Fiduciary Duty*

---

[8] It also of no moment that the Ledger was produced in discovery given Korbelin's prior inconsistent testimony as to the investment in Cargo because it was the Defendants who introduced the Ledger for the purpose of trying to establish that Curious was in dire straits and could not have performed the Disney Goldie and Bear Project. Having made this litigation decision, it can not be said that they are surprised or prejudiced by it (*see Rodriguez*, 81 AD3d at 805; s*ee National Loan Investors, L.P.,* 213 AD3d at 862; *Loomis,* 54 NY2d at 23). As discussed above, the Plaintiff alleges that Ledger revealed that Korbelin and Grasic hatched a multi-year plan to steal cash and assets from Curious and to misappropriate those assets to their own companies by fraudulently creating a series of sham transactions in attempt to mask their wrongdoing. As discussed above, ample evidence was adduced at trial that this is proper for the fact finder to consider.

In order "[t]o state a claim for breach of fiduciary duty, plaintiff[] must allege that (1) defendant owed them a fiduciary duty, (2) defendant committed misconduct, and (3) they suffered damages caused by that misconduct" (*Besen v Farhadian*, 195 AD3d 548, 549 [1st Dept 2021]).

The SAC alleges, based on the evidence that was adduced at trial, that (i) Korbelin, as the CEO of Curious, owed fiduciary duties to Curious and its shareholders; (ii) Korbelin breached his fiduciary duties to Curious and its shareholders when he (a) failed to disclose the transfer of Curious' assets by way of the APA to Grasic's companies, (b) failed to disclose the arrangement with Cargo and then manufactured the forfeiture of Curious' rights in its equity in Cargo such that his wife's company could take it for inadequate consideration, (c) failed to disclose and permitted Curious' funds to be used for Grasic's personal expenses and post-termination salary and bonus without justification, and (d) took Curious' petty cash for unauthorized and unspecified purposes; and (iii) Curious lost equity and funds as a result of Korbelin's breaches (*see Besen*, 195 AD3d at 549).[9] The Defendants have failed to demonstrate any cognizable prejudice in having the fact finder consider this claim (s*ee Rodriguez*, 81 AD3d at 806; *National Loan Investors, L.P.,* 213 AD3d at 862; *Loomis,* 54 NY2d at 23). Accordingly, the branch of the Plaintiff's motion seeking to conform the pleadings to the proof as to this claim against Korbelin is granted *(see id.; Besen*, 195 AD3d at 549; CPLR § 3025[c]).

---

[9] Inasmuch as the Appellate Division Decision already acknowledged that Korbelin was a fiduciary who owed fiduciary duties to Curious' shareholders (*Paley,* 233 AD3d at 591), permitting this cause of action as against Korbelin to be considered by the fact finder is consistent with the Appellate Division's decision and remand (*see e.g., Maracina*, 152 AD2d; *Matter of Sipal Realty Corp.*, 15 AD2d; *Wiener*, 10 AD3d; *Berry*, 106 AD3d; *Glassman*, 96 AD3d; *Micro-Link, LLC*, 155 AD3d; *Eikenberry v Adirondak*, 148 AD2d).

[* 14]

However, in an abundance of caution given the Appellate Division's holding that Grasic did not owe fiduciary duties to Curious, the branch of the motion seeking to assert a cause of action sounding in breach of fiduciary duty against Grasic is denied.[10]

Punitive damages are appropriate where "the wrongdoing is intentional or deliberate, has circumstances of aggravation or outrage, has a fraudulent or evil motive, or is in such conscious disregard of the rights of another that it is deemed willful and wanton" (*Swersky v Dreyer & Traub*, 219 AD2d 321, 328 [1st Dept 1996]; *Georgitsi Realty, LLC v Penn-Star Ins. Co.*, 21 NY3d 606, 611 [2013]).

The SAC alleges that based on the evidence adduced at trial that the Plaintiff is entitled to punitive damages because Korbelin's conduct was willful, wanton and malicious, evinced a high degree of moral culpability, and demonstrated a conscious and deliberate disregard for Paley's rights (*see Swersky*, 219 AD2d at 328; *Georgitsi Realty, LLC*, 21 NY3d at 611). There was ample evidence adduced at trial to support the fact finder's consideration of punitive damages. Because the Defendants have failed to demonstrate prejudice, the branch of the Plaintiff's motion seeking to conform the pleadings to the proof so that the fact finder considers punitive damages is granted (s*ee id.*; CPLR § 3025[c]; *Rodriguez*, 81 AD3d at 806; *National Loan Investors, L.P.*, 213 AD3d at 862; *Loomis,* 54 NY2d at 23).

---

[10] With respect to Grasic, the Appellate Division indicated that Grasic was not a fiduciary of Curious (*see Paley*, 233 AD3d at 592). Although true that as co-owner of Cargo (with Curious), she owed fiduciary duties to Curious, in an abundance of caution, the Court declines to permit this claim to go forward (*see id.*; *see e.g., Maracina*, 152 AD2d; *Matter of Sipal Realty Corp.*, 15 AD2d; *Wiener*, 10 AD3d; *Berry*, 106 AD3d; *Glassman*, 96 AD3d; *Micro-Link, LLC*, 155 AD3d; *Eikenberry v Adirondak*, 148 AD2d).

B. *Aiding and Abetting Breach of Fiduciary Duty*

The elements of aiding and abetting breach of fiduciary duty are: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach (*Kaufman v Cohen*, 307 AD2d 113, 125 [1st Dept 2003]).

As discussed above, based on the evidence that was adduced at trial, the SAC alleges that Korbelin breached his fiduciary duties to Curious and its shareholders. According to the SAC, his wife Grasic was the primary beneficiary of Korbelin's breaches and provided substantial assistance in, among other things, (i) permitting Cargo to freeload rent and services and accrue an obligation to Curious at a time when he was of the view that Curious needed money, (ii) creating a sham transaction so that the substantial sums owed to Curious by Cargo would be wiped out when they learned that the Disney Goldie and Bear Project was "about to be greenlit" and was no longer speculative (*see* VEC 1-153), (iii) permitting Curious' funds to be used for Grasic's personal expenses and providing her with a post-termination salary and bonus, and (iv) misusing Curious' funds for unauthorized purposes, including buying personal items at Toys R Us/Babies R Us; and (v) transferring the Disney Goldie and Bear Project, the Amanda's Alligator Project, and Curious' equipment and software licenses - all for inadequate consideration - to Grasic's shell companies (*see Kaufman*, 307 AD2d at 125).[11]  There simply is no prejudice as to the fact finder considering this claim (s*ee Rodriguez*, 81 AD3d at 806; *National Loan Investors, L.P.,* 213 AD3d at 862; *Loomis,* 54 NY2d at 23) and as such, the branch of the Plaintiff's motion seeking to conform the pleadings to the proof adding the aiding

---

[11] As discussed above, the Appellate Division Decision indicated that Korbelin owed fiduciary duties to Curious' shareholders (*Paley,* 233 AD3d at 591).

and abetting breach of fiduciary duty claim against Grasic is granted (*see id.; see Kaufman*, 307 AD2d at 125; CPLR § 3025[c]).

The SAC also seeks punitive damages as against Grasic because the Plaintiff alleges that the trial record revealed that her conduct was willful, wanton and malicious, evincing a high degree of moral culpability, and demonstrating a conscious and deliberate disregard for Paley's rights (*see Swersky*, 219 AD2d at 328; *Georgitsi Realty, LLC*, 21 NY3d at 611).   Given the substantial evidence adduced at trial as to the extent of her role in the breach of fiduciary duty, the branch of the Plaintiff's motion is granted as well (*see id.*; CPLR § 3025[c]; *Rodriguez*, 81 AD3d at 806; *National Loan Investors, L.P.,* 213 AD3d at 862; *Loomis,* 54 NY2d at 23).

### C.  Conversion

The elements of conversion are (1) the plaintiff's possessory right or interest in property, and (2) the defendant's dominion over or interference with the property, to the exclusion of the owner's rights (*Pappas v Tzolis*, 20 NY3d 228, 234 [2012]).

Based on the evidence adduced at trial, the SAC alleges ***derivatively*** that (i) Curious had a possessory interest in Cargo, (ii) Grasic and her husband Korbelin exercised dominion over Cargo and Curious' interest in Cargo, and (iii) they stole or took Curious' approximately $1.7 million investment (or approximately $1.45 million as of the August Taking Letter) pursuant to a multi-step fraud without adequate consideration or justification (*see Pappas*, 20 NY3d at 234). Although the Plaintiff's new conversion claim is asserted derivatively on behalf of Curious (previously it had been asserted directly such that the Appellate Division dismissed it because

"as a mere member of the LLC, he has no ownership right in its property" [*Paley,* 233 AD3d at 592]), in an abundance of caution, the branch of the motion seeking to conform the pleadings to the proof adding a cause of action sounding in conversion is denied (*see Paley,* 233 AD3d at 592; *see e.g., Maracina*, 152 AD2d; *Matter of Sipal Realty Corp.*, 15 AD2d; *Wiener*, 10 AD3d; *Berry*, 106 AD3d; *Glassman*, 96 AD3d; *Micro-Link, LLC*, 155 AD3d; *Eikenberry v Adirondak*, 148 AD2d).[12]

### D. Usurpation of Corporate Opportunity Against Grasic

The Plaintiff withdrew the cause of action sounding in usurpation of corporate opportunity against Grasic (*tr.* 3.6.26). Accordingly, the branch of the motion seeking to conform the pleadings to the proof to assert this cause of action is denied as moot.

### E. Tortious Interference with Prospective Economic Advantage

To state a cause of action for tortious interference with prospective economic advantage, a plaintiff must allege "that the defendant's interference with its prospective business relations was accomplished by wrongful means or that [the] defendant acted for the sole purpose of harming the plaintiff" (*Tsatskin v Kordonsky*, 189 AD3d 1296, 1298 [2d Dept 2020] [internal citations and quotation marks omitted]). Wrongful means generally requires "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic

---

[12] The Appellate Division Decision held:

> **The conversion claim should have been dismissed. Plaintiff asserted the claim individually.**
> However, as a mere member of the LLC, he has no ownership right in its property (*see Bank of Am. Corp. v Lemgruber*, 385 F Supp 2d 200, 223 [SD NY 2005]). Nor are the contingent contracts at issue the type of property subject to conversion (*see In re Tashlitsky*, 492 BR 640, 649-650 [ED NY 2013], citing *Thyroff v Nationwide Mut. Ins. Co.*, 8 NY3d 283 [2007]).

(*Paley,* 233 AD3d at 592 [emphasis added]).

pressures" (*Guard-Life Corp. v S. Parker Hardware Mfg. Corp.*, 50 NY2d 183, 191[1980]). Conduct that is not criminal or independently tortious is deemed "lawful" and, thus, insufficiently culpable to create liability for interference with prospective contracts or other nonbinding economic relations (*Carvel Corp. v Noonan*, 3 NY3d 182 [2004]).

Based on the evidence adduced at trial, as discussed above, the SAC alleges that Korbelin breached his fiduciary duties and Grasic aided and abetted her husband's breaches of fiduciary duties and together they defrauded Curious and the Plaintiff. These, according to the SAC, are independent torts which form the predicate for this claim. Additionally, the SAC alleges that the evidence at trial established that, among other things, (i) Curious had entered into the Disney Goldie and Bear Project with Disney pursuant to a Production Services Agreement (the **Curious PSA**); (ii) Korbelin, Grasic, Microseries, and Milk Barn were aware of the Curious PSA; (iii) Korbelin, Grasic, Microseries, and Milk Barn intentionally interfered with the Curious PSA by causing its wrongful transfer to Grasic's shell companies, Microseries and Milk Barn, and by doing so committed fraud; (iv) the Defendants' interference resulted in the termination of Curious' relationship with Disney pursuant to the Disney Goldie and Bear Project (*see Tsatskin*, 189 AD3d at 1298 [internal citations and quotation marks omitted]; *Guard-Life Corp.*, 50 NY2d at 191). Ample evidence was adduced at trial to support this claim. As such, it is proper for the fact finder to consider the cause of action for tortious interference with a prospective economic advantage, and the branch of the motion seeking to conform the pleadings to the proof is granted as to this claim (*see id.*).

The SAC also seeks punitive damages because the Defendants' conduct was willful, wanton and malicious, evinced a high degree of moral culpability, and demonstrated a conscious and deliberate disregard for Paley's rights (*see Swersky*, 219 AD2d at 328; *Georgitsi Realty, LLC*, 21 NY3d at 611). There was ample evidence adduced at trial such that this is also properly considered by the fact finder and branch of the motion seeking to conform the pleadings to the proof is granted. Given that the predicate for this assertion claim stems from evidence adduced at trial by the Defendants and testimony (which was inconsistent with prior deposition testimony or otherwise raised serious issues of credibility), there simply is no prejudice under the circumstances (s*ee* CPLR § 3025[c]; *Rodriguez*, 81 AD3d at 805; *National Loan Investors, L.P.,* 213 AD3d at 862; *Loomis,* 54 NY2d at 23).

### F. *Veil Piercing as Against Microseries*

Piercing the corporate veil generally requires a showing that: "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury" (*Matter of Morris v New York State Dept. of Taxation and Fin.*, 82 NY2d 135, 141 [1993]). Complete domination of the corporation is an essential element, but it is insufficient without more, as "[t]he party seeking to pierce the corporate veil must establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party" (*id.* at 141-142). Whether piercing the corporate veil is appropriate in a given case is a fact-specific inquiry, and "the New York cases may not be reduced to definitive rules" (*id.*). In general, however, "the courts will disregard the corporate form. . .whenever necessary to prevent fraud or achieve equity" (*Walkovsky v Carlton*, 18 NY2d 414, 417 [1966] [internal citation and quotation marks omitted]).

Based on the evidence adduced at trial, within the remanded DCL claims, the SAC additionally alleges that (1) Microseries is a shell company and the alter-ego of Grasic, as it had no employees, no capital, and no capital stock at the time of the fraudulent conveyance, that it had never handled any projects other than those that originated at Curious, and that Grasic dominated this entity and (2) Grasic, by way of her domination over Microseries, used this entity to fraudulently acquire Curious' assets (*see Matter of* Morris, 82 NY2d at 141). Veil piercing as against Microseries was previously rejected by the Appellate Division (*Paley,* 233 AD3d at 590-591). In an abundance of caution, the branch of the motion seeking to veil pierce the claims asserted against Microseries is denied (*see e.g., Maracina*, 152 AD2d; *Matter of Sipal Realty Corp.*, 15 AD2d; *Wiener*, 10 AD3d; *Berry*, 106 AD3d; *Glassman*, 96 AD3d; *Micro-Link, LLC*, 155 AD3d; *Eikenberry v Adirondak*, 148 AD2d).[13]

### G. The SAC Seeks to Clarify the Damages Established at Trial

The SAC seeks to clarify that the damages "include," among other things, the value of the Disney Goldie and Bear Project, the Amanda's Alligator Project, all of Curious' transferred equipment, Maya Licenses, Grasic's alleged expenditures and post-termination compensation, the Cargo Investment, and the alleged petty cash withdrawals. The Appellate Division had previously indicated that the damages for the alleged fraud includes "***all of its assets, including*** allegedly valuable contracts" (*Paley*, 233 AD3d at 590 [emphasis added]). Thus, the branch of the motion seeking to conform the pleadings to the proof adduced at trial as to the damages contemplated by the Appellate Division Decision for the causes of action sounding in fraud,

---

[13] The Appellate Division, on the record before it, held that there was "no showing of the badges of fraud sufficient to find Grasic an alter ego of Microseries" (*Paley,* 233 AD3d at 590-591).

**162520/2015 vs. Page 21 of 23**
**Motion No. 011**

21 of 23

[* 21]

usurpation of corporate opportunity against Korbelin, and the DCL claims is granted. Given that the Appellate Division provided a non-exhaustive category or amount of damages and used the language "all of" and "including," there simply is no prejudice under the circumstances (s*ee* *Paley*, 233 AD3d at 590; *see e.g.*, *Maracina*, 152 AD2d; *Matter of Sipal Realty Corp.*, 15 AD2d; *Wiener*, 10 AD3d; *Berry*, 106 AD3d; *Glassman*, 96 AD3d; *Micro-Link, LLC*, 155 AD3d; *Eikenberry v Adirondak*, 148 AD2d); *see* CPLR § 3025[c]; *Rodriguez*, 81 AD3d at 806, *National Loan Investors, L.P.,* 213 AD3d at 862; *Loomis,* 54 NY2d at 23).

### H. No Answer is Required

The issues in this case have been fully litigated and the extent to which the motion is granted is predicated almost exclusively based on the evidence that the Defendants adduced, as such, no answer is necessary or permitted (*see* CPLR § 3025[d]; *Bahar*, 210 AD3d at 460). As such, the Defendants are not permitted to file an answer.

The parties may address what they think the evidence means in their post-trial briefs and the Court will address whether the parties have met their burden warranting the entry of judgment, and if so, what the amount of the judgment should be in its post-trial decision and order.

The Court has considered the parties' remaining arguments and finds them unavailing.

Accordingly, it is hereby ORDERED that the Plaintiff's motion is GRANTED to the extent set forth above; and it is further

ORDERED that the Plaintiff is directed to file a revised version of the SAC that is consistent with this Decision and Order to NYSCEF no later than March 20, 2026; and it is further

ORDERED that the parties shall file post-trial briefs no later than April 3, 2026.

2026031T150551AB0RR0K16C5EA85B04448FEA6EEC0709131B558

**3/11/2026**
**DATE**

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**162520/2015   vs.**
**Motion No.  011**

**Page 23 of 23**